[Cite as *Hagan v. Hagan*, 2019-Ohio-51.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHRIS L. HAGAN | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| HELMUT HAGAN | : | Case No. 18 CAF 03 0030 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County
Court of Common Pleas, Domestic
Relations Division, Case No. 13 DRA
04 0174

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 10, 2019

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

CHRISTOPHER L. TROLINGER      C. GUSTAV DAHLBERG
Petroff Law Offices, LLC      Babbit & Dahlberg, LLC
140 East Town Street, Suite 1070      503 S. Front Street, Suite 200
Columbus, Ohio 43215      Columbus, Ohio 43215-5666

*Baldwin, J.*

{¶1} Defendant-appellant Helmut Hagan appeals the March 2, 2018 Judgment Entry entered by the Delaware County Court of Common Pleas, Domestic Relations Division, which, inter alia, terminated the shared parenting plan between him and plaintiff-appellee Chrisi Hagan, named Appellee sole residential parent and legal custodian of the parties' youngest child, and granted standard visitation between Appellant and the minor child subject to the minor child's discretion.

### STATEMENT OF THE FACTS AND CASE

{¶2} Appellee filed a Complaint for Divorce on April 22, 2013. Appellant filed a timely Answer and Counterclaim. The trial court appointed Attorney Mary Beth Fisher as guardian ad litem for the parties' two children: Jakob, who is not subject to this appeal due to his emancipation, and Joshua (DOB 1/24/03).

{¶3} The guardian ad litem filed her report and recommendation on August 22, 2014, recommending Appellee be awarded sole custody of the children or, in the alternative, shared parenting with Appellee having final decision-making authority. The guardian also recommended Jakob's visits with Appellant occur only when Jakob agreed to such.

{¶4} The parties filed a joint Divorce Settlement Memorandum on August 28, 2014. On October 17, 2014, the parties filed a Joint Shared Parenting Plan ("the Plan"). Pursuant to the Plan, Appellee was designated the resident parent and retained final decision-making authority. Appellant was awarded parenting time as follows: Mondays at 6 p.m. through Wednesdays at school drop off, or 9:00 a.m., on non-school days, as well as alternating weekends during the school year; and alternating weeks during the

summer months.    Appellant's parenting time with Jakob was to occur at Jakob's discretion.    The Plan was incorporated into an Agreed Shared Parenting Decree, journalized October 17, 2014.

{¶5}    The parties were divorced via Agreed Judgment Entry/Decree of Divorce filed October 17, 2014.

{¶6}    Appellee filed a motion to show cause on November 2, 2015, which consisted of 79 pages and alleged 23 contemptuous actions committed by Appellant. Three days later, on November 5, 2015, Appellee filed a Motion to Terminate Shared Parenting or for an Order Reallocating Parental Rights and Responsibilities.    The trial court reappointed the guardian ad litem on December 3, 2015.

{¶7}    On June 8, 2016, the trial court commenced the trial on Appellee's motion to show cause.  Because the trial was not completed, the trial court scheduled a second day to take place in the future.  Thereafter, the parties barraged the trial court with motions over the course of the following six months.

{¶8}    The guardian ad litem filed an interim report and recommendation on December 21, 2016.  The guardian recommended Appellee be granted sole custody of Joshua,[1]  and Appellant receive standard parenting time, but such should be at Joshua's discretion.  In addition, the guardian proposed the parties engage in individual counseling and advised only the biological parents, i.e., Appellant and Appellee, be involved in communications regarding Joshua. The guardian filed a motion to withdraw on December 21, 2016, which the trial court granted on January 23, 2017.  The guardian filed an

---

[1] Jakob emancipated on August 20, 2016.

amended report and recommendation, which did not differ from the interim report and recommendation.

{¶9}   Between January 30, and March 2, 2017, Appellant inundated the trial court with motions.  On March 7, 2017, the trial court ordered Appellant to cease and desist from emailing the court regarding the case unless Appellant was instructed by the court to do so for purposes of scheduling or in the event of an actual emergency.  Appellant continued to file motions. Appellee filed a motion to dismiss all of Appellant's pending motions; a request for sanctions, and a motion to have Appellant declared a vexatious litigator.  On April 21, 2017, the trial court issued 30 separate judgment entries relative to the pending motions.  The majority of the motions were dismissed, overruled, or stricken. The trial court sustained both parties' request for an in camera interview of Joshua.

{¶10}  On April 27, 2017, Appellant filed a motion for contempt and a motion contra Appellee's motion for sanctions.  The following day, Appellant filed three additional contempt motions.  Appellant filed twenty-six separate motions for contempt on May 3, 2017.  An additional five motions for contempt were filed between May 9, and 10, 2017.

{¶11}  The trial court conducted an in camera interview with Joshua on May 12, 2017.  The trial court ordered the record of the in camera interview be sealed for purposes of public, counsel, and/or litigant review.

{¶12}  Subsequently, on May 22, 2017, the trial court dismissed the parties' respective motions to have the other found to be a vexatious litigator.  The trial court also issued several additional entries overruling or dismissing the motions Appellant filed after April 21, 2017.

{¶13} The matter proceeded to trial on May 22, 2017. During the course of the five day trial, the parties came to an agreement as to certain temporary orders, which were incorporated into an Agreed Judgment Entry.[2]

{¶14} The evidence presented at trial revealed Appellant and his new wife, Sue, were married in November, 2014. Appellee and the parties' two sons learned of the marriage after seeing posts on social media. The testimony was undisputed Joshua's relationship with Appellant was good at the time of Appellant and Sue's marriage and up until August, 2016. The guardian ad litem and Joshua's counselor testified in December, 2015, Joshua expressed his desire to have a week-on/week-off parenting schedule.

{¶15} Over time, Joshua's relationships with both Appellant and Sue began to deteriorate. Joshua and his older brother, Jakob, are extremely close. After being estranged from Appellant for approximately three years, Jakob moved into Appellant and Sue's home in June or July, 2015, because he was upset with Appellee. Taylor Temple, who is now married to Jakob, also had moved into Appellant and Sue's home in July, 2015. Taylor had lived with Appellant and Sue on one prior occasion although she and Jakob were not dating at that time. While Taylor was living with Appellant and Sue the first time, they approached her about acting as a surrogate for them. The testimony suggested, but did not clearly establish, Appellant and Sue may have asked Taylor a second time to act as a surrogate while she was living with them in 2015. As a result, Jakob and Appellant's relationship deteriorated further and the developing problems between Joshua and Appellant increased.

---

[2] The orders incorporated into the Agreed Judgment Entry are not at issue in this Appeal.

{¶16} Several witnesses testified Appellant had changed after he married Sue, and was controlled by Sue. Appellee indicated she and Appellant were civil following the divorce, however, after Appellant's remarriage, Sue began to "run the show". Sue posted on the parties' "Our Family Wizard" account; attended and participated in school meetings regarding the children; completed paperwork for Joshua's orthodontist; and communicated via email with school officials, Appellee, the guardian ad litem, and others regarding the case and Joshua. Appellant signed a release allowing Sue to have access to Joshua's counseling records. Appellant gave Sue a power of attorney, allowing her to act on his behalf. Appellee and Appellant would reach an agreement on parenting matters, but Appellant would change his mind after consulting Sue. Sue worked for Allstate, but took a leave of absence to assist Appellant with the case. Sue testified she worked 40 hours or more each week on the case, preparing public records requests and drafting legal paperwork.

{¶17} Sue engaged in a pattern of behavior which negatively impacted Joshua and Appellant's relationship. Sue contacted the Prosecutor's Offices in Franklin County and Delaware County about Appellee's boyfriend, and called the Delaware Sheriff's Department and Federal Bureau of Investigation regarding the case. She also contacted several media outlets with reports of corrupt guardian ad litem and other issues involving the domestic relations court. Sue suggested Appellant revoke his consent permitting Jakob's early enlistment in the Marines, which contributed to the end of Jakob's relationship with Appellant and also impacted Joshua's relationship with Appellant.

{¶18} Sue posted comments about Appellee and her former counsel on social media, and called Appellee derogatory names. Appellant acknowledged Sue had done

so, but indicated such only happened on two occasions and Sue was making an effort to refrain from speaking to Appellee in that manner. Sue admitted she contacted the police on numerous occasions to report an interference with custody when Joshua refused to visit Appellant. She sent emails and other communications with threatening connotations about her possibly filing lawsuits. She filed a lawsuit against Appellee and sought a protection order against Jakob, but in both instances she failed to prosecute. The guardian ad litem testified Sue threatened to sue her, and had contacted her former clients. Sue either justified her actions as non-threatening or downplayed the impact of her actions on others. Joshua believed Sue was responsible for his deteriorating relationship with Appellant.

{¶19} Appellant's behavior during the pendency of the case also negatively impacted his relationship with Joshua. Appellant filed approximately 94 pleadings, most of which were motions for contempt. Appellant's litigiousness negatively affected Joshua. Appellant contacted the police, the prosecutor's office, the FBI, and media outlets regarding the case. Appellant called the police on multiple occasions when Joshua refused to visit. As a result, Joshua was forced to communicate with law enforcement. Appellant sent communications to educators, counselors, Appellee, the guardian ad litem, and other threatening legal action. Appellant showed an unwillingness to engage in reunification counseling with Joshua. He had agreed to participate in reunification counseling in the past, but never followed through and actually attended. At trial, Appellant indicated he was ready and wanted to begin reunification counseling.

{¶20} The parties submitted their closing arguments and proposed findings of fact and conclusions of law on August 16, 2017. Via Judgment Entry filed March 2, 2018, the

trial court terminated the Plan and designated Appellee as the sole legal custodian and residential parent of Joshua for school placement purposes. The trial court found there were multiple changes of circumstances in both Joshua and the parties' lives in the period between Appellee's filing of her Motion to Terminate Shared Parenting or for an Order Reallocating Parental Rights and Responsibilities on November 5, 2015, and the trial in May, 2017. The trial court further found a modification was in the child's best interest, and the harm likely to be caused by a change of environment is outweighed by the advantages. The trial court granted Appellant standard parenting time with Joshua pursuant to the trial court's local rules, subject to Joshua's discretion. The trial court also placed restrictions on the parties' ability to file pleadings. Specifically, the trial court prohibited either party from filing a reallocation motion or any pleading related to Joshua unless and until certain prerequisites were met.

{¶21} It is from this judgment entry Appellant appeals, raising the following assignments of error:

{¶22} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN TERMINATING THE PARTIES' SHARED PARENTING PLAN AND AWARDING SOLE CUSTODY OF THE MINOR CHILD TO PLAINTIFF/APPELLEE."

{¶23} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS IN REALLOCATING THE PARENTING SCHEDULE TO ALLOW SUCH PARENTING TIME AT THE MINOR CHILD'S DISCRETION."

{¶24} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS IN LIMITING HIS ABILITY TO

REQUEST MODIFICATIONS OF ORDERS REGARDING PARENTAL RIGHTS AND RESPONSIBILITIES IN THE FUTURE."

I

{¶25} In his first assignment of error, Appellant asserts the trial court erred and abused its discretion in terminating the Plan and awarding sole custody of Joshua to Appellee. We disagree.

{¶26} A trial court enjoys broad discretion in custody proceedings. *Cossin v. Holley,* 5th Dist. Morrow No.2006 CA 0014, 2007–Ohio–5258, ¶ 28 citing *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. A trial court's decision to terminate a shared parenting plan is reviewed under an abuse of discretion standard. *In re J.L.R.,* 4th Dist. Washington No. 08CA17, 2009–Ohio–5812. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶27} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights and provides, in relevant part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is

necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless the modification is in the best interest of the child * * *and one of the following applies: * * * (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶28} Thus, before a court may modify a prior allocation of parental rights and responsibilities, it must consider: (1) whether a change in circumstances occurred, (2) whether modification is in the child's best interest, and (3) whether the benefits that result from the change outweigh any harm. *Clark v. Smith* (1998), 130 Ohio App.3d 648, 653, 720 N.E.2d 973, 976. The record must support each of these findings or the modification of child custody is contrary to law. *Flickinger,* supra at 417. Additionally, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption retaining the residential parent designated by the prior decree is in the child's best interest. *Meyer v. Anderson* (April 18, 1997), Miami Co. App. No. 96CA32, unreported, 1997 WL 189383.

CHANGE IN CIRCUMSTANCES

{¶29} "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child'." *Lewis v. Lewis,* 12th Dist. Butler No. CA2001–09–209, 2002 WL 517991 (April 8, 2002), citing *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist. 2000). In order to warrant the abrupt disruption of the child's home life, the change in

circumstances must be one "of substance, not a slight or inconsequential change". *Flickinger,* supra at 418. "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer,* 194 Ohio App.3d 240, 955 N.E.2d 453, 2011–Ohio–2610, ¶ 17 (3rd Dist.), citing R.C. 3109.04(E)(1)(a).

**{¶30}** Herein, the trial court found there were multiple changes in circumstances in both Joshua and the parties' lives in the period between Appellee's filing of her motion to reallocate on November 5, 2015, and the trial in May, 2017.  Specifically, the trial court determined Appellant's marriage to Sue and the effect his new wife had had on the rest of the family; the "complete destruction" of Appellant and Joshua's relationship; and Appellant's behavior during the pendency of the case were changes of substance which warranted a finding of changes in circumstances.

**{¶31}** Appellant contends the changes found by the trial court were not substantive and did not warrant the modification.  Appellant notes the parties agreed Joshua's relationship with him was good from the time of his remarriage in November, 2014, up until August, 2016; and around the time of the filing of Appellee's motion in November, 2015.  Prior to August, 2016, Joshua had even expressed a desire to spend more time with Appellant.

**{¶32}** The record establishes Sue engaged in a pattern of behavior which negatively impacted Joshua and Appellant's relationship.  Sue's behavior included contacting the Prosecutor's Offices in Franklin County and Delaware County about

Appellee's boyfriend; contacting several media outlets with reports of corrupt guardians ad litem and other issues involving the domestic relations court; suggesting Appellant revoke his consent permitting Jakob's early enlistment in the Marines; posting comments about Appellee and her former counsel on social media; and sending emails and other messages with threatening connotations about her possibly filing lawsuits. Sue also interfered with parenting decisions agreed upon by Appellant and Appellee. Sue either justified her actions or diminished the impact her actions had on others. Appellant condoned Sue's behavior by downplaying it, encouraging it, and even participating in it. As a result, Appellant's relationship with Joshua deteriorated to the point the boy no longer wished to see his father.

**{¶33}** Remarriage alone is not a change in circumstances. *DeLong v. DeLong,* 5th Dist. Fairfield No. 24–CA–86, 1986 WL 12666 (Nov. 4, 1986). However, a remarriage which results in parental alienation may constitute a sufficient change of circumstances. See, *Fetty v. Fetty-Omaits*, 5th Dist. Tusc. App. No. 2002 AP 07 0053, 2003-Ohio-661, ¶ 53. Furthermore, a remarriage which effects the parents' ability to communicate and a step-parent's taking a lead role in the parenting of a child may constitute sufficient changes in circumstances. See, *Combes v. Combes*, 5th Dist. Morrow No. 14CA007, 2015-Ohio-584, ¶ 22.

**{¶34}** Appellant further submits, although the trial court attributed changes in circumstances to the actions and behaviors of Appellant and his wife during the proceedings, the incidents upon which the trial court relied to support its finding occurred approximately one year after Appellee initiated the litigation and after Joshua stopped

visiting him; therefore, should not be considered in making a change of circumstances determination.

**{¶35}** "In general, courts review motions to modify orders based upon the circumstances as it existed at the time of the filing of the motion." *Sims v. Durant,* Fairfield App. No. 2008–CA–27, 2008–Ohio–6442, at ¶ 6 (Citation omitted.). "However, if necessary, in determining change of circumstances, a domestic relations court may consider developments that occurred after the motion was filed." *Id.* "[A] trial judge must have wide latitude in considering all the evidence" when making a determination of change of circumstances. *Flickinger,* supra at 418. If a court could not consider events as they continued to unfold once a custody motion is filed, the trial court would be perpetually re-addressing new filings alleging a change in circumstances due to the inevitable passage of time between the filing of the original custody motion and the date of the hearing on the motion. This barrier is meant to operate as the "domestic relations version of the doctrine of res judicata," and is meant to prevent the "constant relitigation of the same issues" adjudicated in prior custody orders. *Perz v. Perz,* 85 Ohio App.3d 374, 376, 619 N.E.2d 1094 (1993).

**{¶36}** Based upon the foregoing, we find the trial court did not abuse its discretion in finding several changes in circumstances warranting further consideration relative to the reallocation of parental rights.

BEST INTEREST

**{¶37}** If a change of circumstances is established, the trial court must weigh the best interest of the children before modifying a residential-parent designation. R.C. 3109.04(F), which sets forth the factors a trial court must consider in determining the best interest of the child, provides:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶38}** We find no abuse of discretion in the trial court's conclusion it was in Joshua's best interests to name Appellee the residential parent and legal custodian. The trial court's decision thoroughly analyzed the factors and the findings were supported by the record. In particular, the trial court noted Appellant and Sue's overly aggressive and litigious nature, which ultimately subjected Joshua to repeated interactions with police and other law enforcement officials. In addition, the guardian ad litem recommended the Plan be terminated and Appellee be granted sole custody of Joshua.

HARM OUTWEIGHED BY THE ADVANTAGE OF CHANGE

**{¶39}** R.C. 3109.04(E) does not set forth specific factors a trial court must consider in weighing whether the harm caused by a change in custody is outweighed by the benefits of the change. *Gibson v. Gibson*, 7th Dist. Columbiana App. No. 17 CO 0034, 2018-Ohio-2772, ¶ 56, citing *In re Jeffreys*, 7th Dist. No. 01-BA-4, 2002-Ohio-703.

**{¶40}** The trial court found, "The sole potential harm of which the Court can conceive is that [Appellant's] relationship with Joshua will be completely destroyed if Joshua is not made to visit his father." March 2, 2018 Judgment Entry at 30. The trial court indicated it was "gravely concerned that Joshua will never visit with his father and the relationship will be totally, and irrevocably lost." *Id.* The trial court, nonetheless, found there were advantages to the change and the change "may be the only way in which to salvage [Appellant's] relationship with Joshua." *Id.*

**{¶41}** Despite this apparent "catch 22," we do not find the trial court abused its discretion in finding the harm caused by the change in custody was outweighed by the benefits.

**{¶42}** Based upon the foregoing, Appellant's first assignment of error is overruled.

II

**{¶43}** In his second assignment of error, Appellant maintains the trial court erred, abused its discretion, and violated his due process rights by reallocating the parenting schedule to allow parenting time to be at the minor child's discretion.

**{¶44}** A trial court has the discretion to limit or restrict visitation rights. *Jannetti v. Nichol*, 7th Dist. No. 97–CA–239, 2000 WL 652540, *3 (May 12, 2000). "This includes the power to restrict the time and place of visitation, to determine the conditions under which

visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." *Id.* A trial court's decision concerning visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. As set forth, supra, an abuse of discretion implies an attitude that is unreasonable, arbitrary or unconscionable. *Id.*

{¶45} We are to give deference to the trial court's factual findings because it is better situated to judge the credibility of the witnesses and the weight to be given the testimony and evidence. "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Trickey v. Trickey* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952), as cited in *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). After reviewing the evidence and making factual findings, the trial court applied the analysis required by R.C. 3109.04(E)(2)(d) to determine how to serve the best interest of Joshua and resolve the dispute between the parents.

{¶46} Appellee and the guardian ad litem sought an order that would allow parenting time at the discretion of Joshua with appellee as the residential parent. Appellant was asking to be appointed residential parent, presumably with regular parenting time allotted to the appellee. The trial court concluded that the best interest of Joshua would be served by awarding regular parenting time to the appellant, but, "given the totality of the evidence presented at trial, [appellant's] parenting time should be at Joshua's discretion." The trial court considered not only the voluminous amount of material submitted by the parties and the recommendation of the guardian ad litem, but also the concerns and wishes of Joshua expressed during an extensive in camera

interview. The trial court struggled with this decision and acknowledged the relationship among the parties had so deteriorated that all of the options had both positive and negative aspects. The trial court finally concluded that imposing an obligation of parenting time would worsen the relationship Joshua had with his parents. Court ordered parenting time with appellant had caused Joshua to become physically ill and he had refused to visit appellant. Appellant's response was to make hundreds of calls to law enforcement and other agencies and to file motions to hold appellee in contempt. Joshua had been required to respond to law enforcement inquiries, worsening his relationship with appellant. The trial court feared that compelled visits at this time would further weaken the strained relationship and perhaps permanently destroy it, and therefore, the trial court found that ordered parenting time was not in Joshua's best interest.

{¶47} The trial court concluded that a rational solution was to order visitation that would be exercised at the discretion of Joshua. The parties acknowledged they still had respect and love for each other and the trial court hoped that, given the opportunity, they would restore their relationship without the burden of a court order.

{¶48} The United States Supreme Court did note that a parent's right to the care, custody and control of their child is a firmly established right and duty, but that decision was in the context of a dispute between the parents and grandparents of a child. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2056, 147 L.Ed.2d 49 (2000). The statute at issue in that case left the decision regarding the best interest of the child solely in the hands of the judge with no deference to the parents. "A court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the

child's best interest." *Troxel*, supra at 67. The facts in the case at bar are significantly different. We have no third party in the case at bar, but instead a dispute between the natural parents as to the best interest of the child. Further, the trial court in this case is not compelling visitation as was the court in *Troxel* but is simply allowing the 16-year-old child the discretion to control contact with his father.

**{¶49}** The Supreme Court of Ohio has concluded "Indeed, it must be remembered that the single most important individual in a case addressing visitation rights is the child." *In re Whitaker*, 36 Ohio St.3d 213, 217, 522 N.E.2d 563 (1988). The Tenth District Court of Appeals, recognizing the importance of the best interest of the child, noted that "While the right of a parent *** to visit with his child is an important right, it is the welfare of his child that is paramount." *Foster v. Foster*, 40 Ohio App.2d 257, 266–67, 319 N.E.2d 395 (10th Dist.1974). That court noted that an affirmative and independent decision by a child to not visit a parent plays a pivotal role in whether visitation should be compelled. *Smith v. Smith*, 70 Ohio App.2d 87, 89–90, 434 N.E.2d 749 (10th Dist.1980). The Eighth District has noted that if a child can affirmatively and independently decide not to have visits and "[i]f a child is actually unwilling to see the noncustodial parent and no useful purpose would be served by forcing visitation, visitation privileges may be denied." *Pettry v. Pettry*, 20 Ohio App.3d 350, 350–51, 486 N.E.2d 213, 214 (8th Dist.1984). The Second District has found that "the best interests of the child is of paramount consideration in granting visitation rights," *Smiley v. Smiley*, 2nd Dist. Montgomery No. 10742, 1988 WL 76190, *4 and that "[i]t is also the rule that while a parent's right of visitation with his or her children is an important right, it is subservient to the welfare of the children." *In re Jergens*, 2nd Dist. Montgomery No. 16848, 1998 WL 336702, *1.

**{¶50}** These cases support the conclusion that, in the context of the case at bar, the statement that the parental right takes precedence over the child's wishes is inaccurate and the implication that visitation may only be suspended if the parent is unsuitable or abusive is incorrect.  This court has held that:

> A trial court's establishment of a non-residential parent's visitation rights is within its sound discretion, and will not be disturbed on appeal absent a showing of an abuse of discretion. *Appleby v. Appleby*, 24 Ohio St.3d 39, 41, 492 N.E.2d 831 (1986); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N .E.2d 1028 (1989). The trial court's discretion over visitation in this situation is broader than the court's discretion regarding child custody matters. Id., citing *State ex rel. Scordato v. George*, 65 Ohio St.2d 128, 419 N.E.2d 4 (1981). Furthermore, the trial court must exercise its discretion in the best interest of the child. *Bodine v. Bodine,* 38 Ohio App.3d 173, 175, 528 N.E.2d 973 (1988). A trial court also has discretion to follow or reject the recommendations of a guardian ad litem. *Wine v. Wine*, 5th Dist. Delaware No. 04 CA F 10 068, 2005–Ohio–975, ¶ 75.

*Hammons* v. Hammons, 5th Dist. Delaware No. 13 CAF 07 0053, 2014-Ohio-221, ¶ 12.

**{¶51}** Domestic relations matters often involve a dispute between parents regarding what is in the best interest of their children.  While the parents possess the right to the care, custody and control of their children, citing that right does not resolve the conflict. The legislature has provided guidelines within which the trial court must exercise

its discretion to determine the best interest of the child, often to the disappointment of one or both parents. This process is a limited, but necessary imposition upon parental rights. The trial court in this case completed a thorough review of the facts and followed the recommendation of the guardian ad litem to decide that the best interest of JOSHUA would be served by allowing him to decide when he would visit appellant. This decision was not arbitrary, unreasonable or unconscionable, but was a proper exercise of the trial court's decision.

{¶52} Appellant's second assignment of error is overruled.

III

{¶53} In his final assignment of error, Appellant contends the trial court erred, abused its discretion, and violated his due process rights by limiting his ability to file future requests for modification of his parental rights and responsibilities.

{¶54} With respect to restricting the parties' ability to file future pleadings, the trial court explained:

> Both parties proposed orders restricting either the other party or both parties from filing future pleadings in this case. * * *
>
> The Court will not order a blanket filing restriction as to all issues that could be raised between these two parties as it would be unconstitutional and unfair.
>
> However, the Court believes that a narrow restriction is required in this case given the conduct of the parties, specifically [Appellant]. Again, of the approximate 117 pleadings since the reactivation of the case,

[Appellant] was responsible for approximately 94 of these motions, many of which are contempt motions. Even assuming that most every contempt motion was meritorious, several of these motions were frivolous as they collectively would have resulted in one finding of contempt for the purposes of future contempt charges/proceedings. Moreover, several of [Appellant's] contempt motions were improperly filed or otherwise facially defective. This resulted in [Appellee] incurring additional attorney fees to review and/or respond to these motions.

* * *

Upon reflection, the Court **FINDS** that some reasonable, narrowly drawn restrictions must be put into place. Accordingly, neither party shall be permitted to file a reallocation motion nor any pleading related to Joshua unless and until certain steps are performed.

[Appellee] shall not be permitted to file any of these pleadings until she has paid 50% of her allocation of the court costs in this matter. Upon payment of 50% of the court costs, [Appellee] will be able to file any motion related to Joshua after obtaining leave of court. The Court shall not deny leave solely based on the fact of unpaid court costs. Upon payment of 100% of the court costs, this restriction shall be terminated.

[Appellant] shall not be permitted to file any of the aforementioned pleadings until he has paid 50% of his allocation of the court costs, GAL fees, and other payments owed to [Appellee] in this matter. Upon payment of 50% of these costs/fees/other payments, [Appellant] shall be permitted

to file any motion related to Joshua after obtaining leave of court. The Court shall not deny leave solely based on the fact of unpaid court costs, GAL fees, and other payments owed to [Appellee]. Upon payment of 75% of these fees and other costs, this restriction shall be terminated as [Appellant] would have shown good faith on the repayment of the court-ordered payments.

Neither party shall be restricted from filing a motion to reallocate, motion to modify parenting time, nor any other similar motion based on the allegation that [Appellant] and Joshua have reestablished a relationship as parenting time between a father and son after a long period of animosity and/or separation would clearly be in the child's best interest. However, the party filing said motion must first obtain leave. * * *

Further, given the extent of evidence presented at trial, neither party should be permitted to file any future pleadings related to the Plan. Any future post-decree motion regarding any issues involving the minor child must be brought based upon the orders contained in this Entry.

Finally, this restriction does not apply to any other issues between these parties as it relates to their Decree of Divorce other than the issues related to the children. * * * To reiterate, the only restrictions placed on these parties are related directly to the issue of Joshua.

March 2, 2018 Judgment Entry at 49-53.

**{¶55}** We note the record reflects not only were Appellant's motions multitudinal, but they were also often exceedingly lengthy. We find the restrictions at issue are sufficiently limited. In addition, the trial court placed restrictions on both Appellant and Appellee. The restrictions are finite. Once Appellant pays 50% of court costs and fees, he is free to file any motions related to Joshua with leave of court. After paying 75% of court costs and fees, the restriction on Appellant will be terminated.

**{¶56}** Appellant's third assignment of error is overruled.

**{¶57}** The judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed.


By: Baldwin, J.

Hoffman, P.J. and

Wise, Earle, J. concur.