[Cite as *Massong v. Tyner*, 2022-Ohio-2933.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BRYAN MASSONG, | : | APPEAL NO. C-210549 |
| | | TRIAL NO. F16-2479z |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| ASHLEE TYNER, | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 24, 2022

*Stagnaro Hannigan Koop, Co., LPA*, and *Michaela M. Stagnaro*, for Plaintiff-Appellant,

*Arnold Law Firm, LLC,* and *Britt Born,* for Defendant-Appellee.

**BERGERON, Judge.**

{¶1} In this parental-custody case, plaintiff-appellant Bryan Massong petitioned the juvenile court for sole custody of his son or, in the alternative, increased parenting time. Defendant-appellee Ashlee Tyner requested that the juvenile court eliminate Mr. Massong's parenting time entirely or require supervised visits. The court met the parties somewhere in the middle, selecting Ms. Tyner as the custodial parent and granting Mr. Massong visitation for six hours every other week with the opportunity to earn more parenting time if he completes counseling sessions. On appeal, Mr. Massong raises five assignments of error, arguing that the juvenile court abused its discretion in various ways when curtailing his parenting time. Finding no abuse of discretion, we accordingly overrule his assignments of error and affirm the judgment of the court below.

I.

{¶2} Mr. Massong and Ms. Tyner are the biological parents of E.M., born in June 2014. Their relationship was acrimonious to say the least, marred by allegations of domestic violence and abuse by both parties. The turbulent relationship ended in the summer of 2015, when E.M. was approximately one year old. Shortly after, Ms. Tyner began dating James Dwolf, her now husband and E.M.'s stepfather.

{¶3} The parties attempted to handle custody and visitation between themselves initially but that proved untenable. Mr. Massong filed a petition for custody or shared parenting in November 2016. An agreed parenting plan was entered in August 2017, granting Ms. Tyner legal custody and awarding Mr. Massong visitation every Tuesday and every other weekend. Unfortunately, having a formal shared-

parenting plan and visitation schedule in place failed to alleviate the hostility between the parties.

{¶4} Over the next two years, both parents violated provisions of the agreed parenting plan. Ms. Tyner neglected to give Mr. Massong access to E.M.'s school records, consult with Mr. Massong before signing E.M. up for extracurricular activities, or inform Mr. Massong or the court of her relocation within Hamilton County. Mr. Massong, for his part, persisted in communicating with Ms. Tyner outside of the approved messaging system put in place by the court. Many of the messages sent by Mr. Massong were threatening, insulting, and disparaging to Ms. Tyner and Mr. Dwolf.

{¶5} Eventually, in 2019, Mr. Massong again petitioned the court for sole custody or additional parenting time. Through mediation, the parents agreed to follow a temporary parenting plan until the juvenile court ruled on Mr. Massong's petition. But the parties could not await that determination, as Ms. Tyner filed a motion to modify the temporary parenting agreement and both parties filed motions for contempt, each alleging violations of the temporary parenting plan.

{¶6} Due to the Covid-19 pandemic and other scheduling issues, the juvenile court did not hold the combined custody and parenting-time trial until September and October 2020. In light of evidence and testimony given at the hearings that E.M. was tardy to school every morning for two months when Mr. Massong took him, and that issues arose surrounding the exchanges of E.M., the juvenile court revised the interim order so that Mr. Massong did not have overnight visitations through the week and ordered that all exchanges take place at the Cincinnati Police Department.

3

{¶7} A few months later, Ms. Tyner requested an ex parte emergency order asking the court to suspend Mr. Massong's visitation entirely or to order that the visits be supervised, averring that she believed E.M. to be in danger of immediate physical harm or threat of harm. According to her, Mr. Massong's behavior deteriorated after the court suspended his overnight visits. E.M. allegedly returned from Mr. Massong's home in tears, claiming that Mr. Massong said he "can't take this anymore" and "won't see him again" because he "is going far, far, away forever." Ms. Tyner also detailed in her affidavit that Mr. Massong persisted in texting her directly, that he told E.M. that Ms. Tyner stabbed him with a knife, and that he refused to exchange E.M. at the police department as ordered by the court. Mr. Massong's parenting time with E.M. was suspended entirely once Ms. Tyner filed the emergency motion.

{¶8} At the hearing on the emergency order, Ms. Tyner offered to withdraw the motion and allow Mr. Massong's visitation to be reinstated if he agreed to abide by the provisions of the court-approved temporary parenting plan (which the parties were still operating under because no final custody decision had yet been entered). Mr. Massong declined, claiming he wanted to postpone the hearing and consult a lawyer "because of the veracity of the case substantiating facts." At the continued hearing on the emergency motion some six weeks later, Mr. Massong fixated on proving that Ms. Tyner did indeed stab him with a knife during the argument over five years ago, despite the court's continuous admonishment that the only evidence it would hear pertained to the emergency motion. The court found he violated the terms of the parenting plan and noted his erratic behavior in court proceedings, concluding by ordering that Mr. Massong's visitation remain suspended until the court issued a decision in the custody case.

4

{¶9} The juvenile court entered its final decision on Mr. Massong's custody petition and Ms. Tyner's request to modify parenting time in September 2021. Mr. Massong now timely appeals, raising five assignments of error.

II.

A.

{¶10} In his first assignment of error, Mr. Massong argues that the juvenile court erred by not finding that a change of circumstances occurred since the previous order of custody. R.C. 3109.04(E) sets forth the procedures to be followed if either a parent or the trial court finds it necessary to make changes to a shared-parenting decree or plan. *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, ¶ 9. Relevant here is R.C. 3109.04(E)(1)(a), which provides that before modifying a prior decree allocating parental rights and responsibilities, the trial court must find that a change has occurred in the circumstances of the child or the child's residential parent. Under R.C. 3109.04(E)(1)(a),the change in circumstances must be "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." The changed conditions must also "be substantiated, continuing, and have a materially adverse effect upon the child." *In re E.R.*, 1st Dist. Hamilton No. C-180615, 2019-Ohio-4491, ¶ 6.

{¶11} Mr. Massong contends that Ms. Tyner's relocation, E.M.'s age, and the introduction of a stepfather into the family dynamic qualify as changed circumstances. While Mr. Massong concedes that none of those events on their own would constitute a change in circumstances under the statute, he believes that, when taken together, courts recognize the totality of similar happenings to represent a change in circumstances warranting a modification to the custody order. This argument is

correct on the surface so far as it goes. "A change of circumstances can be upheld based on a collection of findings as to how the lives of the residential parent and the child have changed since the prior decree." *Gibson v. Gibson*, 7th Dist. Columbiana No. 17 CO 0034, 2018-Ohio-2772, ¶ 42.

{¶12} But the argument breaks down under even casual scrutiny of the record evidence at hand. The trial court disagreed with Mr. Massong, finding that even when taken together, E.M.'s age, mother's relocation, and the hostility between the parents was insufficient to find a change of circumstances occurred. "We review a trial court's change-in-circumstances determination for an abuse of discretion because 'a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change.' " *Souders v. Souders*, 1st Dist. Hamilton No. C-210469, 2022-Ohio-1953, ¶ 8, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 416, 674 N.E.2d 1159 (1997). Before we will reverse, Mr. Massong must show that the trial court "exercise[ed] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. On this record, we are not persuaded.

{¶13} To begin with, regarding E.M.'s age, a child's maturation from infancy to school age is not sufficient on its own to constitute a changed circumstance. *See In re E.R.*, 1st Dist. Hamilton No. C-180615, 2019-Ohio-4491, at ¶ 10. In his merit brief, Mr. Massong relied on a case in which a trial court allocated parental rights shortly after the birth of the child, and a later trial court failed to consider whether the child's "maturation over the past fifteen years, combined with her expressed desire to live with [father] and any other circumstances in this case, constitute a change in circumstances sufficient to warrant inquiry into the other requirements of R.C. §

6

3109.04(E)(1)(a)." *In re Custody of M.B.*, 2d Dist. Champaign No. 2006-CA-6, 2006-Ohio-3756, ¶ 20.

{¶14} But Mr. Massong filed his motion less than two years after the agreed order establishing parental rights, a significant factual distinction. He points to no case law suggesting that such a nominal progression in age constitutes a change in circumstances, and there is no indication in the record that E.M. expressed a desire to live with Mr. Massong. Thus, we will only consider E.M.'s advancement in age as part of a collective finding.

{¶15} Mr. Massong further alleges in this assignment of error that the introduction of a stepfather fostered a hostile relationship between the parties. The record squarely contradicts the notion that Ms. Tyner's relationship with Mr. Dwolf is a new fact that has "arisen since the prior decree." The marriage itself may have been a recent development, but Ms. Tyner and Mr. Dwolf both testified that they dated for approximately five years before getting married in 2020.

{¶16} Nor can Mr. Massong seriously allege that stepfather is the source of increased conflict between the parents. Mr. Massong cites as the "prime example" an incident where stepfather would not allow him to carry a sleeping E.M. into the house—a prudent decision considering the threatening messages lobbed at Mr. Dwolf over the years. Although Mr. Massong seems to take issue with dropping E.M. off with anyone other than Ms. Tyner, we see no requirement in the parenting decree that Ms. Tyner herself be available during exchanges.

{¶17} Turning to Ms. Tyner's relocation, we appreciate Mr. Massong's frustration on this point. Ms. Tyner admitted to moving without notifying the court as required by the agreed entry and neglected to inform Mr. Massong of the move until

after she closed on the sale of the new property. The move increased the time it takes Mr. Massong to pick up and drop off E.M., but it hardly constitutes the type of disruption to visitation that can only be overcome through extraordinary efforts. *See Long v. Long,* 3d Dist. Union No. 14-10-01, 2010-Ohio-4817, ¶ 32-33 (affirming relocation as a change in circumstance where eight hours of travel would be required to maintain visitation schedule). As the court pointed out, Ms. Tyner's relocation was within the same county and "relocation of the residential parent, by itself, is not sufficient to be considered a change of circumstances." *Souders*, 1st Dist. Hamilton No. C-210469, 2022-Ohio-1953, at ¶ 12. Mr. Massong has not alleged circumstances surrounding Ms. Tyner's relocation that would overcome R.C. 3109.04(E)(1)(a)'s presumption in favor of retaining the existing parenting decree.

{¶18} The juvenile court did not abuse its discretion in declining to find that the events described above amounted to a change in circumstances, either individually or in the collective. Accordingly, we overrule Mr. Massong's first assignment of error.

B.

{¶19} Mr. Massong's second assignment of error claims that the juvenile court abused its discretion by not considering E.M.'s best interests. This assignment of error only proceeds with a predicate determination that a change in circumstances occurred. *See Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-2398, ¶ 20 ("After finding a change in circumstances, the court must determine whether a modification is in the best interest of the children."). The trial court found the change in circumstances requirement unfulfilled, and thus dispositive, and did not examine the best-interest factors. Because we agree that no change in circumstances

8

occurred, and because Mr. Massong's second assignment of error is premised on that initial finding, his second assignment of error is likewise overruled.

C.

{¶20} In his third assignment of error, Mr. Massong contends that the juvenile court erred in finding that the magistrate's reliance on evidence presented during the emergency motion hearing to be harmless error. Mr. Massong's visitation rights were suspended during the pendency of the emergency hearing, which took place after the custody trial but before the magistrate issued his ultimate custody decision. The trial court agreed that it was error for the magistrate to rely on evidence presented at the emergency motion hearing, but also explained that it "conducted an independent review of this matter, and [found] this error harmless, as there was sufficient evidence to support the Magistrate's Decision at the full trial on the matter."

{¶21} Mr. Massong now requests that this court remand the matter and instruct the trial court to offer him make-up time for the visitations he missed as a result of the emergency motion, and to offer him more parenting time in general. First, in some respects, this seems like a self-inflicted wound. Ms. Tyner's counsel attempted to withdraw the emergency order on the condition that Mr. Massong follow the court's orders regarding communication and exchange locations. The magistrate asked Mr. Massong if that was acceptable, reminding him that his parenting time would be reinstated that very day if Ms. Tyner withdrew the motion. Mr. Massong refused, more focused on litigating past incidents from 2014 than on visitation with E.M. He cannot now ask us to remedy a situation he himself created.

{¶22} Second, as to Mr. Massong's claim of prejudice by virtue of the magistrate's improper reliance on evidence not pertinent to the matter at hand, we

9

disagree. The trial court addressed this argument in its judicial entry, finding the evidence from the full custody trial sufficient to support the magistrate's decision even without the evidence presented at the emergency motion hearing. In his brief, Mr. Massong isolates certain statements made by the magistrate at the emergency hearing. But the trial court relied on evidence from the full trial in its entry, and Mr. Massong failed to point us to errors in that record on this assignment of error. Accordingly, we overrule his third assignment of error.

D.

**{¶23}** In his fourth assignment of error, Mr. Massong maintains that the juvenile court's decision to limit his parenting time to only six hours every other week runs counter to the manifest weight of the evidence and does not further E.M.'s best interest. When establishing specific parenting time and determining a visitation schedule, courts must consider fifteen enumerated factors as well as "any other factor in the best interest of the child." *See* R.C. 3109.051(D). The juvenile court "enjoys broad discretion when setting parenting time and determining the conditions under which parenting time will take place." *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 42. "Thus, we review the trial court's [limiting of Mr. Massong's] parenting time under an abuse-of-discretion standard, as guided by the statutory best-interest factors set forth in R.C. 3109.051(D)." *Id.*

**{¶24}** The trial court engaged with all the statutory requirements in its entry and made many findings supported by the record. For instance, the trial court noted its concerns about the safety of E.M. pursuant to R.C. 3109.051(D)(7), highlighting Mr. Massong's violent text messages over the years and the fact that E.M. once came home from a visit with bruises and a bitten ear. It considered the mental and physical health

10

of the parties as directed by R.C. 3109.015(D)(9) and found that Mr. Massong displayed anger management issues not just towards Ms. Tyner and Mr. Dwolf, but in front of the court as well. And it rejected as unfounded Mr. Massong's accusation that Mr. Dwolf harmed E.M. by grabbing him by the shoulders. *See* R.C. 3109.051(D)(1).

{¶25} Mr. Massong responds that he credibly manifested remorse over his past behavior and that the trial court should have afforded more weight to his versions of the evidence. As continually emphasized by this and other Ohio courts, "[t]he trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). We see no basis in the record to second-guess the trial court's findings here. Accordingly, we overrule Mr. Massong's fourth assignment of error.

E.

{¶26} In his last assignment of error, Mr. Massong claims it was an abuse of discretion for the juvenile court to fail to order the parties to attend coparenting counseling. He contends, somewhat incredulously, that Ms. Tyner has "arguably contributed to the friction between the parties to the same degree" he has, therefore they both should attend coparenting counseling to learn how to reduce the conflict between them.

{¶27} Courts may order mandatory coparenting counseling as a condition of a shared parenting plan, *see Teufel v. Teufel*, 1st Dist. Hamilton No. C-160673, 2017-Ohio-5732, ¶ 9, but Mr. Massong cites to no authority indicating that a court abuses its discretion when it does not order counseling. The trial court here found that the toxicity between the parties stems almost exclusively from Mr. Massong's behavior, a

11

finding undoubtedly supported by competent and credible evidence. In addition to the disturbing text messages referenced by the court, Mr. Massong violated the court order not to communicate directly with Ms. Tyner, refused to return E.M. at the required time because Mr. Dwolf would not allow him in their home, failed to exchange E.M. at the court-ordered location and forced Ms. Tyner to meet at a place of his choosing, and spoke disparagingly about Ms. Tyner in front of E.M.

**{¶28}** We acknowledge Mr. Massong's professed remorse about his past behavior, but this calls to mind the adage that actions speak louder than words. The trial court left open the possibility of increased visitation with E.M. if Mr. Massong completes an anger management program or engages in counseling for at least six months. That strikes us as a prudent course of action that could benefit all involved. But on the present record, we cannot say that the trial court abused its discretion by refusing to order coparenting counseling. Accordingly, Mr. Massong's fifth assignment of error is overruled.

\* \* \*

**{¶29}** In light of the foregoing analysis, we overrule all five of Mr. Massong's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.