[Cite as *Veach v. Adams*, 2022-Ohio-4031.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TIFFANY L. VEACH, | : | APPEAL NO. C-220072 |
| | | TRIAL NO. DR-1402299 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| AARON J. ADAMS, | : | |
| Defendant-Appellant. | : | |

Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 14, 2022

*The Lampe Law Office, LLC*, and *Vicki L. Richmond*, for Plaintiff-Appellee,

*Alex van der Zee*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Aaron J. Adams ("father") appeals the judgment of the Hamilton County Court of Common Pleas, Domestic Relations Division, which modified the terms of his parenting time. Appellant's appeal is focused on one sentence of the court's order that states, "No child shall be forced to attend parenting time with Father and the Court will not entertain any motion for contempt for the refusal of a child to attend parenting time when that child has vehemently protested going to Father's home." For the reasons that follow, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶2} The parties were divorced via a decree of divorce entered by the court on July 29, 2016. Five children—O.A., C.A., I.A., M.A., and L.A.—were born issue of the marriage.[1] Plaintiff-appellee Tiffany L. Veach ("mother") was designated the residential parent and legal custodian of the children and an order was issued for father to have parenting time. Mother filed a motion to modify or restrict father's parenting time on August 28, 2020, asserting that father was recently terminated from his employment under allegations that were concerning. Father filed his own motion to modify parenting time on January 4, 2022, asserting that mother had "blocked" his parenting time on numerous occasions and requesting that the court order him more time with the children. Father filed an amended motion the following day with no relevant changes. A hearing was held on all motions on February 10, 2022.

{¶3} At the hearing, mother entered as evidence records from father's previous employer, Proclean, which asserted that father was fired for sexual

---

[1] O.A. reached 18 years of age during the pendency of this case and is therefore not the subject of this appeal.

harassment of two minor employees and making inappropriate sexual comments to other employees. Father testified that he was shocked when he saw these records as he was only told that the owner wanted to part ways. Father denied that the allegations in the records were true. The general manager of Proclean testified that father—who was the regional manager at Proclean—would engage in "inappropriate talk" about sex at work and said that father was fired after this was brought to the owner's attention. The general manager also testified that he distanced himself from father because father's behavior made him feel "sick and uncomfortable." Father admitted in his testimony that he was also fired from Amazon due to allegations of sexual harassment.

{¶4} Mother also entered as evidence a photo of a camera that was found in the closet of M.A. and I.A.'s room at father's house. Father testified that the camera was removed about a year ago. He said that the camera was placed there to watch his two-year-old daughter, who was born issue of his current marriage. He claimed that he and his wife would place the two-year-old in the room with a baby gate across the door and the camera would allow his wife to watch the child while he was at work. He said that he only became aware that the camera made M.A. and I.A. ("the girls") uncomfortable when his attorney told him, and that is when he took the camera down. He denied ever recording the girls in their bedroom or ever accessing the camera. He testified that he also had a camera in the two-year-old's room. Mother testified that she found out about the camera from O.A.

{¶5} Both parties testified regarding an incident that occurred with M.A. during father's parenting time the weekend of February 12, 2021. Mother testified that she texted father before his parenting time to let him know that M.A. was not feeling well. Father testified that M.A. had a "slight fever" and he gave her medicine and Gatorade to keep her hydrated. He said that M.A. was crying and said that she didn't

feel well and her stomach hurt, so he gave her medicine and her stomach stopped hurting. He claimed that it was "just like a typical flu," and MA. was feeling better on Sunday before she left. Mother testified that, when M.A. got out of the car at the parenting exchange at the end of the weekend, M.A. looked pale and "so sick." She took M.A. to the emergency room and was told that M.A. was in "complicated shock." She said that M.A.'s blood pressure was extremely low and her heart rate was extremely fast, and she was in so much pain from her stomach that the medical staff gave her fentanyl several times. M.A. was in the hospital for four days and was diagnosed with MIS-C, which is a condition that children develop after COVID that is extremely rare but severe. Mother described this experience as having a traumatic effect on all the children.

{¶6}   Testimony was presented regarding the children's behavior leading up to and during parenting exchanges. Mother's husband testified that the girls would start "acting out" on the Thursday prior to their visits with father. He described "acting out" as screaming, hollering, fighting and just "being bad" in general. He said that the girls would fight and cry and "stuff like that" on the way to and from parenting exchanges and said that it usually took them a few days to get back to normal. He denied that C.A. or L.A. ("the boys") acted any differently before father's parenting time. Mother testified that M.A. would cry and "go to herself," while I.A. would be kicking and screaming on the floor. She said that this behavior happened all the time, but also said that the "crying and stuff" had "eased up" since I.A. had gotten older. Regarding the boys, mother testified that they were "okay." Father denied that the girls ever made him aware that they did not want to come to his house and said that he only heard about it from mother. He claimed that the girls told their mother one thing and him another.

{¶7} Mother testified that the girls' changes in behavior, the camera in their bedroom at father's house, and the fact that father was terminated from his employment for sexual harassment caused her to have a "bad feeling." She said that she just wanted the children to be safe and protected and said, "I think there's a lot of mental abuse happening, and I am concerned about the kids honestly."

{¶8} Father testified that he did not believe that mother would follow any "open-ended" parenting-time order and said that he felt like mother would not answer his call or text him back if he asked for more time with the children. He submitted a list of missed parenting-time dates where no make-up time was given or offered. Mother agreed that father had missed those parenting times. She testified that one of the times was when the girls were crying and screaming in the road at the parenting exchange and M.A. "physically climbed in the back seat to hide," so she did not send the children to father's house.

{¶9} After the hearing, the trial court entered a decision on February 11, 2022, granting all motions. The court expressly considered the factors under R.C. 3109.051(D) and ordered that there was to be no change in father's parenting time except for a few slight changes not relevant to this appeal. As stated above, this appeal concerns one sentence of the court's order that says, "No child shall be forced to attend parenting time with Father and the Court will not entertain any motion for contempt for the refusal of a child to attend parenting time when that child has vehemently protested going to Father's home."

## II. Law and Analysis

### A. Discretion of a Child to Attend Parenting Time

{¶10} In his first assignment of error, father asserts that the trial court erred by giving the children discretion not to attend parenting time. "We review the trial

court's judgment on modifications to parenting time for an abuse of discretion." *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-2398, ¶ 27, citing *Souders v. Souders*, 1st Dist. Hamilton No. C-210469, 2022-Ohio-1953, ¶ 6. "An abuse of discretion 'implies that the trial court's decision was unreasonable or arbitrary.' " *Id.* at ¶ 14, citing *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 6. The trial court has broad discretion in modifying parenting time. *Id.* at ¶ 27, citing *In re Ross*, 154 Ohio App.3d 1, 2003-Ohio-4419, 796 N.E.2d 6, ¶ 5 (1st Dist.).

{¶11} Where one parent is the legal custodian of the children, modifications to parenting time are governed by R.C. 3109.051. *Id.* at ¶ 28, citing *Hartman v. Hartman*, 8th Dist. Cuyahoga No. 107251, 2019-Ohio-1637, ¶ 16, and *Braatz v. Braatz*, 85 Ohio St.3d 40, 43, 706 N.E.2d 1218 (1999), paragraph one of the syllabus. "In determining whether to modify parenting time, a change in circumstances is not required." *Id.* at ¶ 30, citing *Braatz* at paragraph two of the syllabus. "Rather, the court must determine whether the modification is in the child's best interest, considering the best-interest factors set forth in R.C. 3109.051(D)." *Id.*, citing *Ross* at ¶ 5. The best-interest factors include, in relevant part, the prior interaction and interrelationships of the child with the child's parents, the age of the child, the health and safety of the child, the mental and physical health of all parties, and any other factor in the best interest of the child. R.C. 3109.051(D)(1), (4), (7), (9), (16). "Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child." R.C. 3109.051(A).

**{¶12}** "A trial court has the discretion to limit or restrict visitation rights." *Hagan v. Hagan*, 5th Dist. Delaware No. 18 CAF 03 0030, 2019-Ohio-51, ¶ 44, citing *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 Ohio App. LEXIS 2116, *3 (May 12, 2000). " 'This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.' " *Id.*, quoting *Janneti*; *accord Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 17. The best interest of the child is the paramount consideration when granting visitation rights and a parent's right to visit a child is subservient to the welfare of the children. *Id.* at ¶ 49.

**{¶13}** "[A]n affirmative and independent decision by a child to not visit a parent plays a pivotal role in whether the visitation should be compelled." *Id.*, citing *Smith v. Smith*, 70 Ohio App.2d 87, 89-90, 434 N.E.2d 749 (10th Dist.1996). Courts have upheld a trial court's decision to allow parenting time to be at a child's discretion where the trial court's determination that such discretion was in the best interest of the child was supported by the record. *See, e.g., Hagan* at ¶ 46-47, 51; *Wilson v. Redmond*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 7-8, 12-13; *Kelley v. Kelley*, 6th Dist. Wood No. WD-19-073, 2020-Ohio-1535, ¶ 42-43.

**{¶14}** Here, the trial court left participation in parenting time within the discretion of each child only to the extent that no child would be forced to attend parenting time. Father argues that the trial court's order will allow mother to manipulate the children into not exercising any parenting time with him. However, such concerns are not supported by the record. The record shows that M.A. and I.A. have a history of acting out in anticipation of their parenting time with father and, in some circumstances, have even expressed their desire not to attend parenting time

with father by crying, screaming, lying on the ground, or hiding in mother's car. Notably, the protests from the children occurred on the way to the parenting exchange or at the exchange. There was no evidence of any manipulation by mother to cause the children to avoid parenting time. In fact, the evidence indicated that the protest occurred while mother was trying to cause the children to attend parenting time. We recognize that the evidence reflects that only the girls have protested parenting time. However, the trial court's order would only become relevant to the boys if they exhibited similar protests to attending parenting time. When looking at what was in the best interest of the children, the trial court expressly considered all the best-interest factors and determined that it was in the best interest of the children not to be forced to attend parenting time. Based on the evidence presented in this case, we cannot say that such a determination was unreasonable or arbitrary. Therefore, we hold that the trial court did not abuse its discretion in ordering that no child shall be forced to attend parenting time, and we overrule this assignment of error.

### B. Conduct Constituting Contempt

{¶15} In his second assignment of error, father asserts that the trial court erred when it ordered that it would not entertain any motion for contempt for the refusal of a child to attend parenting time. Father argues that the trial court's order prevents him from "exercising his right to hold mother in contempt for interfering with his parenting time." However, father's reading of the court's order is too broad. "The trial court is empowered to 'determine the kind and the character of conduct that constitutes contempt.' " *Bohannon*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-2398, at ¶ 47, quoting *Fisher v. Fisher*, 7th Dist. Harrison No. 17 HA 0008, 2018-Ohio-2477, ¶ 25. In essence, by saying that the court would not entertain a motion for contempt in the narrow circumstance where a child had "vehemently"

protested attending parenting time, the court was establishing that mother's conduct in not forcing the child to attend under these circumstances would not constitute contempt. Courts have upheld a trial court's decision not to hold a residential parent in contempt where, despite encouragement, a child of suitable age had refused to engage in parenting time. *See, e.g., K.M.M. v. A.J.T.*, 8th Dist. Cuyahoga No. 109815, 2021-Ohio-2452, ¶ 26-28.

{¶16} Based on the record, it is apparent that the court's order was assuming a situation in which a child's protest was obvious, such as when M.A. was crying and screaming and hiding in the back of the van to avoid going with father. If the children exhibit this type of behavior at an exchange, there would be little question that the children were "vehemently" protesting going with father. Therefore, the court's order would not encompass a situation such as the one father is envisioning where mother manipulates the children into saying they did not want to attend parenting time. Should father feel that mother is attempting to influence the children in this way, nothing about the court's order would prevent him filing a motion for contempt. Therefore, we overrule this assignment of error.

## IV. Conclusion

{¶17} Having overruled both assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry this date.

9