[Cite as *In re E.J.M.*, 2024-Ohio-3082.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: E.J.M.
:     APPEAL NO. C-240026
      TRIAL NO. F-16-2479Z
:

:     *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 14, 2024

*Smith, Meier & Webb, LPA*, and *Andrew P. Meier* for Appellant Father,

*Law Office of Laurie B. Gibson* and *Laurie B. Gibson* for Appellee Mother.

**BERGERON, Presiding Judge.**

{¶1} Years of acrimonious litigation regarding the custody of Parents' shared child resulted in a court order awarding appellant Father six hours of weekly parenting time. But less than a year later, prompted by concerning changes in the child's behavior following visits with Father, appellee Mother began withholding Father's parenting time and later moved to modify parenting time. Father responded by filing a series of contempt motions and a motion to expand his parenting time. Ultimately, after sifting through the evidence, the juvenile court agreed with Mother and terminated Father's parenting time, citing its concerns for the child's well-being. Father now appeals, arguing that the court abused its discretion by terminating his parenting time and by failing to hold Mother in contempt. But the record tells a different story, and, unpersuaded by Father's arguments, we overrule his assignments of error and affirm the juvenile court's judgment.

I.

{¶2} E.J.M., born in 2014, is the biological son of Mother and Father (together, "Parents"). Parents have a long and acrimonious history marred by allegations of domestic violence and abuse by both parties. Their romantic relationship ended in 2015 when E.J.M. was approximately one year old. Initially, Parents attempted to coordinate visitation and custody themselves, but in November 2016, Father filed a petition for custody or shared parenting. Parents entered an agreed parenting plan in August 2017, granting Mother legal custody and awarding Father parenting time every Tuesday and every other weekend. But unfortunately, this plan did not resolve the conflict between Parents. Over the next two years, both Parents violated various provisions of the agreed plan.

{¶3}    In 2019, Father again petitioned the court for custody or additional parenting time.  Through mediation, Parents agreed to follow a temporary parenting plan until the juvenile court resolved the matter, but the temporary plan did not last long as Mother sought to modify the temporary parenting agreement, and both Parents filed dueling motions for contempt.

{¶4}    In September and October 2020, the juvenile court convened the combined custody and parenting time trial, and it ultimately revised the interim order so that Father did not have overnight visitations during the week and ordered all exchanges to occur at the Cincinnati Police Department.  A few months later, Mother requested an ex parte emergency order to suspend Father's visitation entirely or to order supervision for all visits, citing concerns that E.J.M. faced danger of immediate physical harm or threat of harm.  Mother alleged that E.J.M. had returned from Father's home in tears, claiming that Father told E.J.M. that he "can't take this anymore," "won't see him again," and "is going far, far away forever."  Mother also detailed in her affidavit that Father persisted in texting her directly, told E.J.M. that Mother stabbed him with a knife, and refused to exchange E.J.M. at the police department as ordered by the juvenile court.  The court suspended Father's parenting time upon the filing of the emergency motion.

{¶5}    At the hearing on the emergency motion, Mother offered to withdraw the motion and allow Father's visitation to be reinstated if he agreed to abide by the provisions of the court-approved temporary parenting plan (under which Parents were still operating because no final custody decision had been entered).  But Father declined Mother's offer, claiming he wanted to postpone the hearing and consult a lawyer.  Following the continued hearing, the court determined that Father violated

the terms of the parenting plan, noted his erratic behavior during the court proceedings, and ordered that his visitation remain suspended until the court issued a decision in the custody case.

{¶6} The juvenile court entered its final decision on Father's custody petition and on Mother's request to modify parenting time in September 2021. The court limited Father's visitation with E.J.M. to six hours every other Sunday but stated that it would consider increasing Father's visitation if he completed an anger management program or engaged in counseling. And prompted by Father's threats to Mother, the court advised Father that his visitation would be immediately terminated if he contacted Mother outside of their approved parenting application. Father appealed the decision to this court, challenging various aspects of the juvenile court's order, including the restriction of his visitation time and the court's finding of a change in circumstances. Based on the record, we upheld the juvenile court's decision. *See Massong v. Tyner*, 2022-Ohio-2933 (1st Dist.).

{¶7} Beginning in September 2021, Parents followed the 2021 decision. But in August 2022, things again fell apart. When Mother arrived to pick up E.J.M. from a visit with his Father, he ran out of Father's vehicle, crying hysterically. Prompted by E.J.M.'s concerning behaviors following this visit, Mother immediately suspended E.J.M.'s visits with Father. She enrolled E.J.M. in school counseling to address his changes in behavior. And in September 2022, Mother moved to modify parenting time. In response, Father launched a series of four contempt motions and moved to modify parenting time in October 2022.

{¶8} A magistrate held a preliminary hearing on parenting time and other pending motions in May 2023. Without a full evidentiary hearing, she referred the

matter for eligibility screening to facilitate supervised parenting time for Father. But Mother immediately filed a motion to set aside the order and issue a stay, and the court granted a stay pending trial on the matter.

{¶9} At the trial before the magistrate in June 2023, Parents (who were both represented by counsel) testified and introduced exhibits. Mother testified that after spending time with Father, E.J.M. would often come home with bruises and scratches and exhibited concerning behaviors. Prompted by these behaviors, she placed E.J.M. in school counseling. According to Mother, Father also contacted her outside of the parenting application, in violation of the court's order. Mother obtained a domestic violence civil protection order (valid through April 2024), but E.J.M. was not a protected party under the order.

{¶10} Father, on the other hand, testified that from September 2021 until August 2022, he and E.J.M. spent time together being active—playing sports, riding bikes and hiking. He alleged that E.J.M. seemed full of energy and happy during their visits but noted that E.J.M. was usually tired afterwards (because of the active nature of their visits). He claimed he never noticed the child acting upset during drop-off. Additionally, Father testified that he was in therapy from 2016 until 2021 and attended an eight-week anger management program in 2022. Father maintained that because of therapy and his classes, he knows how to control and handle his emotions in a more productive manner. And finally, Father clarified that he texted Mother outside of the approved parenting application simply because he was responding to a call from her.

{¶11} After hearing Parents' testimony and considering the evidence, the magistrate denied Father's motions for contempt, finding that while Mother violated a valid court order, she reasonably and in good faith feared for E.J.M.'s safety in light

of the child's distress following his visits with Father. After weighing the best interest factors, the magistrate terminated Father's parenting time as in E.J.M.'s best interest.

**{¶12}** Father promptly objected, insisting that the decision essentially deprived him of his parental rights. The juvenile court heard oral arguments on his objection in October 2023. Upon reviewing the magistrate's decision and hearing Father's objections, the juvenile court overruled all objections and adopted the magistrate's decision. Father now appeals.

II.

**{¶13}** In his first assignment of error, Father argues that the juvenile court erred in terminating his parenting time without providing any possible measures to continue his relationship with E.J.M. This court reviews the juvenile court's modification of parenting time for "an abuse of discretion." *Wilfong v. Bush*, 2023-Ohio-1256, ¶ 18 (1st Dist.), citing *Veach v. Adams*, 2022-Ohio-4031, ¶ 10 (1st Dist.). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 35. The juvenile court "has broad discretion in modifying parenting time." *Veach* at ¶ 10, citing *Kane v. Hardin*, 2019-Ohio-4262, ¶ 27 (1st Dist.). And that discretion includes the power to " ' "deny visitation rights altogether." ' " *Id.* at ¶ 12, quoting *Hagan v. Hagan*, 2019-Ohio-51, ¶ 44 (5th Dist.), quoting *Jannetti v. Nichol*, 2000 Ohio App. LEXIS 2116, *8 (7th Dist. May 12, 2000).

**{¶14}** Here, Mother is the legal custodian of E.J.M., so any modification to Father's parenting time is governed by R.C. 3109.051. *See id.* at ¶ 11. Therefore, a change in circumstances is not required. Instead, the juvenile court was required to

determine whether the modification furthered the child's best interest, considering the factors set forth in R.C. 3109.051(D). The best interest factors include:[1]

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity . . .;

(2) The geographical location of the residence of each parent and the distance between those residences . . .;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent . . . as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

---

[1] The factors set forth in R.C. 3109.051(D)(12) and (15) are not applicable to Parents, so we omit them here.

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights . . .;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

. . .

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

. . .

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D); *see Wilfong* at ¶ 20.

**{¶15}** Here, the juvenile court assessed all of the relevant best interest factors. Regarding the child's interactions and relationships with Parents and any siblings, the court emphasized the child's "tremendous anguish" after visits with Father that resulted in him sleeping on Mother's bedroom floor, which was new and unusual

8

behavior for the child, Father's history of behavior for which he was ordered (and did complete) anger management, and Mother's domestic violence protection order regarding Father. The court also weighed the geographical location of each parent, the age of E.J.M. (nine years old), E.J.M.'s adjustment to Mother's house and community (and his recent lack of time spent with Father since visits were suspended in August 2022), and the fact the child's half-sibling lived in Mother's home. And it noted that there was not any testimony demonstrating that the schedules of Parents and E.J.M. caused any difficulty with Father's parenting time.

{¶16} The court contemplated the wishes of E.J.M. as expressed by the child via an in-camera interview. And it expressed concerns for E.J.M.'s health and safety while in Father's care, citing the changes in E.J.M.'s behavior. At trial, Mother testified that in 2022, E.J.M. began exhibiting concerning new behaviors after visits with Father—he acted upset, was very quiet, declined to eat, and isolated himself in his room. Additionally, she testified that the child would return home with bruises and scratches. She offered photos of these injuries. However, the photograph of the scratches was dated two days after E.J.M. had returned from a visit, and a photograph of bruising on E.J.M.'s ear from Father biting it was from 2021 (prior to the court's September 2021 order). While Father argues that the juvenile court relied only on old evidence that was already used as the basis to restrict his parenting time to six hours weekly via the 2021 court order, and Mother did proffer at least one piece of old evidence (which notably the court determined was inadmissible), Mother presented ample new evidence for the court to consider.

{¶17} The court also evaluated the lack of any mental or physical health concerns regarding either parent, any convictions or adjudications related to child

9

abuse or neglect, and any residence out of this state (or plans to establish such a residence). Although the court noted that Mother "continuously and willfully" denied Father parenting time, it found that she "had a reasonable, good faith belief that she must deny visitation to protect the safety of the child." And finally, the court declined to consider any additional factors in the best interest of the child.

{¶18} While we appreciate Father's comparison of the termination of his parenting time to a termination of his parental rights and acknowledge his frustration with the lack of a clear pathway to reestablish his relationship with E.J.M., the court's decision regarding parenting time is not irrevocable, and Father could later request the juvenile court to reinstate his parenting time if circumstances warrant it. But, at this point, given his behavior, the evidence of the safety concerns regarding the child, and the severe distress the child suffered following visits with Father, the court acted in the best interest of E.J.M. and did not abuse its discretion when terminating his parenting time. Accordingly, we overrule Father's first assignment of error.

III.

{¶19} Turning to Father's second assignment of error, he challenges the juvenile court's failure to find Mother in contempt for denying his parenting time. In response, Mother claims that she had a reasonable, good faith belief that she had to deny his parenting time to protect the safety of E.J.M.

{¶20} This court reviews a juvenile court's ruling on a contempt motion for an abuse of discretion. *Morrison v. Walters*, 2023-Ohio-2887, ¶ 19 (1st Dist.), citing *Wolf v. Wolf*, 2010-Ohio-2762, ¶ 4 (1st Dist.). As stated above, an abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson,* 2021-Ohio-3304, at ¶ 35.

10

{¶21} Parents subject to a custody order may initiate a contempt action when the other party fails to comply with the order. *See* R.C. 2705.031(B)(2). The moving party may establish a prima facie case of civil contempt by proving, by clear and convincing evidence, " 'both the existence of a court order and the nonmoving party's noncompliance with the terms of that order.' " *Morrison* at ¶ 19, quoting *Wolf* at ¶ 4. "Once the movant establishes a prima facie case of contempt, the burden shifts to the nonmovant to establish a defense for the noncompliance." *In re G.W.*, 2024-Ohio-1551, ¶ 14 (1st Dist.), citing *Wolf* at ¶ 4. Several Ohio courts have found that such a defense may arise when a residential parent "has a reasonable, good faith belief that he or she must deny visitation to protect the safety of the child." *Thompson v. Thompson*, 2023-Ohio-667, ¶ 57 (12th Dist.), citing *Brennan v. Brennan*, 2021-Ohio-1865, ¶ 37 (5th Dist.); *see Steele v. Steele*, 2013-Ohio-3655, ¶ 20 (2d Dist.).

{¶22} There is no dispute regarding the existence of a court order entitling Father to parenting time or Mother's failure to comply with the order. Therefore, we proceed by evaluating whether Mother established a defense for her noncompliance with the court order. The juvenile court found that "Mother had a reasonable, good faith belief she must deny Father's visitation to protect the safety of the Child," referencing E.J.M.'s "unusual and concerning distress" following visits and prior restrictions on Father's parenting time due to his behavior.

{¶23} Father ascribes error to the court's determination, arguing that Mother's concern regarding E.J.M.'s safety was primarily based on alleged events occurring before September 2021 (when the court issued the initial custody order). But, as discussed in the best interest analysis above, Mother presented new evidence of E.J.M.'s concerning behavior following visits with Father.

11

{¶24} Father also seems to assert that because Mother's domestic violence civil protection order against Father does not include E.J.M. as a protected party, the order indicates that the child did not need protection. But the exclusion of the child from the protection order is not dispositive of the reasonableness of Mother's belief that she needed to deny Father parenting time in order to protect E.J.M. Similarly, Father notes that the child has only seen a school-based counselor twice following the alleged harm. Again, this fact is not sufficient to establish that Mother's concern for the child was unreasonable. Scheduling and school resource issues could have prevented the child from seeing the counselor more frequently; it in no way casts doubt on Mother's legitimate fear for E.J.M.'s safety.

{¶25} And further, as a condition of Father's parenting time, his communications with Mother were limited to the parenting application—the court order specifically stated that "[a]ny contact with Mother made by Father outside of the [parenting application], and absent an emergency involving Child, shall result in immediate suspension of Father's visitation." Yet Mother testified that Father contacted her outside of the application to inform her that his subscription to the application had lapsed (not an emergency involving the child). Notably, however, Mother did not begin withholding parenting time immediately upon receiving the out-of-application messages.

{¶26} Based on these facts, we hold that the juvenile court did not abuse its discretion by failing to find Mother in contempt for withholding Father's parenting time and overrule Father's second assignment of error.

\*          \*          \*

**{¶27}** In light of the foregoing analysis, we overrule Father's assignments of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**WINKLER** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.