[Cite as *Hammond v. Hammond*, 2024-Ohio-5946.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CECILIA M. HAMMOND (WOLFE) | : | |
| | : | |
| Appellee | : | C.A. No. 30235 |
| | : | |
| v. | : | Trial Court Case No. 2020 DR 00236 |
| | : | |
| MATTHEW G. HAMMOND | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 20, 2024

. . . . . . . . . . .

CHARLES D. LOWE, Attorney for Appellant

JENNIFER J. WALTERS, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Matthew G. Hammond appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which

sustained objections to a magistrate's decision and found that his ex-wife Cecilia M. Hammond (nka Wolfe) was not in contempt of court. For the reasons set forth below, we affirm.

## I.     Facts and Procedural History

{¶ 2} Hammond and Wolfe divorced in November 2020. The final judgment and decree of divorce designated Wolfe as the legal custodian and residential parent of the parties' two minor children. Hammond was granted parenting time in accordance with the Montgomery County Standard Order of Visitation.

{¶ 3} During the pendency of this case, Hammond has resided with his mother, Karen Hammond. On December 31, 2020, Hammond was exercising his parenting time at his mother's home. Sometime that evening, Hammond and his brother were involved in a physical altercation. Karen Hammond used pepper spray on Hammond in order to stop the altercation; she then returned the children to Wolfe. On January 14, 2021, the parties executed an agreed order limiting Hammond's parenting time to alternating Saturdays from 10:00 a.m. to 9:00 p.m.

{¶ 4} On September 22, 2021, Hammond filed a Civ.R. 60(B) motion for relief from judgment, which sought to vacate the January 2021 agreed order modifying his parenting time. In the motion, Hammond stated that, when he entered the agreement, he did not know that Wolfe had remarried.[1] He further stated that the marriage caused him "great consternation." Hammond also claimed Wolfe had acted fraudulently because, when

---

[1] Wolfe remarried in April 2021.

she presented him with the agreed order, she had assured him they could "revisit the issue of parenting time once the situation between [Hammond] and his brother calmed down." Hammond asserted that he had signed the order in reliance upon this representation, which he claimed "[Wolfe] had no intention to perform." He also stated that, prior to signing the agreed entry, he had suffered a brain injury which required surgery. He claimed "[h]is brain injury was such that he had difficulty processing facts and situations and suffered information overload, which caused him to make unwise decisions including his relinquishing most of his parenting time with his children."[2] Finally, he noted he did not have "the benefit of legal counsel" when he signed the order. Alternatively, the motion sought to modify parenting time. The matter was set for a hearing on February 1, 2022.

{¶ 5} On the day of the scheduled hearing, the parties appeared and entered into an agreed order increasing Hammond's parenting time to include one overnight visitation on alternating weekends. The order also required Hammond to pick up the children to "initiate his parenting times." Wolfe was required to pick up the children following his parenting time. Finally, the order appointed a guardian ad litem ("GAL") to make recommendations regarding parenting time. The order was not filed until February 18, 2022.

{¶ 6} On March 2, 2022, Hammond filed a motion to show cause, seeking to hold

---

[2] The record does not demonstrate that Hammond suffered a brain injury. Instead, according to the record, Hammond suffers from epilepsy. The surgery to which the motion refers occurred in July 2020, prior to the divorce. In a May 2022 letter, Hammond's neurologist stated that Hammond had not suffered any seizures since the surgery and that he was "capable of working and driving with no restrictions."

Wolfe in contempt for failing to comply with the parenting order. In the motion, Hammond claimed he had been denied parenting time on February 12 and February 26, 2022. A hearing on the motion commenced on May 17, 2022, but could not be completed on that date. The magistrate entered an order to continue the hearing, which also stated: "Parenting time shall continue on every other Saturday from 10:00 a.m. to 9:00 p.m." The order required Wolfe to transport the children to Hammond for parenting time and required Hammond to transport the children back home after completion of his parenting time.

{¶ 7} In May 2022, the GAL filed a report stating that the children were "well-adjusted to home, school and community. They both do exceptionally well academically, have appropriate extracurricular activities, and . . . are both polite and respectful children." The report stated that both children expressed being traumatized by Hammond's having had a physical altercation with his brother in their presence. It further indicated that the children "express being uncertain as to how [Hammond] will behave and react, they do not feel safe with him, and although they would prefer not to have parenting time with him, they both indicate it would be better for them not to have to spend the night with him." The report stated that the children had attempted to explain their concerns to Hammond "without success" and that it was the children who had "chosen not to have parenting time" with Hammond. The report went on to state the GAL believed that Hammond's not having parenting time with the children "derives from their feelings and not from [Wolfe's] denying [Hammond] parenting time[.]" The GAL recommended counseling so that the children could share their thoughts and concerns with Hammond in a non-threatening,

neutral environment, and so that Hammond could hopefully act upon their concerns in an appropriate manner. Finally, the GAL recommended that Hammond receive parenting time on alternate Saturdays from 10:00 a.m. to 9:00 p.m., and that the court conduct a six-month review of the matter.

{¶ 8} On November 2, 2022, Hammond filed a second motion to show cause, which again sought to hold Wolfe in contempt for denying him parenting time. The motion stated only that Wolfe "intentionally has continued to prevent [Hammond] from having his parenting time." The motion did not set forth any time frame regarding the alleged missed parenting time.

{¶ 9} On that same date, Wolfe filed a motion to modify parenting time. In the motion, she stated that Hammond had exercised parenting time on October 22, 2022; when Hammond and his mother transported the children home, they refused to let the children exit the vehicle for approximately 39 minutes. The motion stated that the children ultimately exited the car by climbing out a window, and that Hammond had attempted to restrain the son from exiting the car.

{¶ 10} The record demonstrates that, when Hammond and the children arrived at Wolfe's home on October 22, there were several outdoor lights on, but there were no visible lights from within the home. Hammond testified that he texted Wolfe at approximately 8:55 and 8:57 p.m. to confirm that she was in the home. Wolfe testified that she had been watching television and had not had her cellular telephone with her. She testified that, when she and her husband noticed that it was 9:00 p.m. and the children had not returned home, she retrieved her phone and observed Hammond's texts.

Wolfe then texted Hammond at 9:05 p.m. and stated that he should let the children enter the home. Hammond was not satisfied with Wolfe's response because she did not explicitly state she was inside the home. He thus indicated he would not let the children exit the car until Wolfe confirmed she was home. Wolfe's husband then walked out of the front door, but Hammond still refused to let the children exit the vehicle. Instead, Hammond called 911 and indicated that he would not let the children out of the car until the police arrived. The children eventually were able to crawl out of a window despite Hammond's attempt to restrain his son. It is clear from the record that this event was upsetting to the children.

{¶ 11} The contempt hearing resumed on February 28, 2023. However, it still was not completed. On March 1, 2023, the magistrate entered an interim agreed order requiring parenting time on alternate Saturdays from 10:00 a.m. to 9:00 p.m., beginning on March 4, 2023. The order required the parties to exchange the children at "Scene 75."[3] The order also required the parties to "pursue counseling for children with goal of reunification[.]"

{¶ 12} On March 9, 2023, Hammond filed a third motion to show cause, which sought to hold Wolfe in contempt for failing to provide parenting time on March 4, 2023. In the motion, Hammond stated that he and his mother had arrived at Scene 75 for an exchange, but the children had refused to get in his mother's car and visitation did not occur.

{¶ 13} The third and final hearing on the contempt issues asserted by Hammond

---

[3] Scene 75 is a local entertainment center on Poe Avenue in Dayton.

was conducted on April 26, 2023. Thereafter, the magistrate found Wolfe in contempt. In the decision, the magistrate noted that the GAL had focused on the fight between Hammond and his brother as an underlying basis for the reluctance of the children to visit with their father. However, in the magistrate's view, the altercation was not a valid basis for the children's issues with parenting time, mainly because Wolfe did not seek counseling for the children after the incident.[4] The magistrate also did not consider the event on October 22, 2022, outside of Wolfe's home to constitute a reason for the children to have an issue with Hammond. Indeed, the magistrate referred to the incident as "a mountain out of a molehill." The decision further stated:

> [Wolfe] does not dispute that [Hammond] did not have parenting time as ordered. [Wolfe] asserts she "encourages" and tells the children to go for visitation. However, all other credible testimony and evidence demonstrates that she sides with the children and supports their reluctance.

> [Wolfe] has not obtained counseling to address the children's concerns. [Wolfe], if she instructs the children to go with [Hammond], does not provide any consequences for the children's refusal. [Wolfe's] having the care and control of the children, allows the children ages 13 and 10, to dictate whether or not they will have contact with the other parent. There are no consequences for their disobedience. [Wolfe] has not taken any action to require the children to obey her instructions to visit. Her inaction has empowered the children to deny visitation contrary to this Court's order.

---

[4] There is evidence in the record that the parties' son participated in counseling for approximately six months following the altercation.

It is found by clear and convincing evidence that [Wolfe] has not complied with [parenting time orders]. [Wolfe's] acquiescence and support of the children's unabated refusal is found to be [Wolfe's] refusal to comply with the parenting order.

{¶ 14} Wolfe timely filed objections to the magistrate's decision, arguing that the evidence presented by Hammond did not meet the standard of proof to support a finding of civil contempt.

{¶ 15} In a judgment filed on July 10, 2024, the domestic relations court stated that it had conducted an independent review of the record and had concluded that the magistrate erred in holding Wolfe in contempt. The court also ordered parenting time for Hammond to occur every weekend for a period of eight hours with no overnight visitation. The court further ordered the parties to continue the visitation exchanges at Scene 75 and to participate in counseling. Finally, the court ordered Wolfe to "take a firmer stance on encouraging the children's participation in the visitation by giving them consequences for noncompliance, i.e. taking away the cell phone or 'grounding' them from social activities." The matter was then set for review in four months.

{¶ 16} Hammond appeals.

## II. Analysis

{¶ 17} Hammond fails to state an assignment of error as required by App.R. 16(A)(3). Based upon our construction of his argument, we assert the following assignment of error on his behalf:

THE DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION BY SUSTAINING WOLFE'S OBJECTIONS TO THE MAGISTRATE'S CONTEMPT DECISION.

{¶ 18} Hammond contends the domestic relations court abused its discretion when it sustained Wolfe's objections and rejected the magistrate's finding of contempt; he argues the record contained sufficient evidence to demonstrate that Wolfe intentionally interfered with his parenting time.

{¶ 19} Contempt of court is defined as disobedience of a judicial order. *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), syllabus. A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with a court's prior order. *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268 (2d Dist.1996). Clear and convincing evidence is that which leaves the trier of fact with the firm conviction or belief that the allegations involved are true. *Cross v. Ledford*, 161 Ohio St. 469, 478 (1954).

{¶ 20} "When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate." *In re Anderson*, 2013-Ohio-2012, ¶ 14 (2d Dist.). Instead, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's decision and enter its own judgment. Civ. R. 53. Thus, the trial court engages in de novo review and should not adopt the magistrate's factual findings unless it agrees with them. *Crosby v. McWilliams*, 2003-Ohio-6063, ¶ 33-35 (2d Dist.). The trial court has discretion to determine whether to sustain or overrule an objection to a magistrate's decision, and we

will not reverse that determination absent an abuse of that discretion. *In the Matter of the Estate of Price*, 2014-Ohio-537, ¶ 9 (2d Dist.).

{¶ 21} In sustaining Wolfe's objections to the magistrate's decision, the trial court stated:

> Here, with respect to the three separate Motions to Show Cause for interference with Parenting Time, the Court will address these allegations collectively. There is no dispute that there has been a parenting time order in place during each alleged interference with parenting time. Nor does either party dispute that [Hammond] did not receive his parenting time as ordered. It is also undisputed that [Wolfe] made the children available for parenting time and transported the children for same.
>
> The crux of the alleged interference is whether or not [Wolfe] did enough to encourage the children to go with [Hammond] for parenting time as ordered. [Wolfe] testified that she always encouraged the children to go with [Hammond] for parenting time. Further, [Wolfe] testified that she tried to engage [Hammond] in encouragement of the children attending parenting time, though [Hammond] refused to call or coax the children into attending as ordered. It appearing from the collective testimony of the Parties, [Hammond] believes it is only [Wolfe's] role to encourage and facilitate the parenting time, whereby [Hammond] sits and waits to see if compliance will take place. [Wolfe] also testified to, and [Hammond] acknowledged that on one occasion [Wolfe] dropped the children off at Scene 75 for the visitation

to begin, but that [Hammond] refused to go inside to get the children and left thereafter. [Hammond] did not notify [Wolfe] that he left the children there, though on a separate occasion he refused to drop the children at [Wolfe's] home without confirmation that [Wolfe] was home. That incident ended with the Parties calling law enforcement to assist in what now was one of the incidents leading to the children's discomfort with [Hammond].

[Wolfe] has acknowledged that she has not employed disciplinary tactics to force the visitation. [Wolfe] testified that [she] tried to talk to the children about their concerns, and if they had legitimate concerns, she does not discipline them for not complying. [Wolfe] testified that she does not feel that discipline is an appropriate parental response when the children are telling they feel uncomfortable or unsafe.

At this point, the children are pre-teen/teenage or very near and in order to get the relationship between the children and [Hammond] back on track all parties will have to have some buy in. Based on the totality of evidence presented, the Court finds that [Wolfe] was not in Contempt for any of the three Motions to Show Cause.

{¶ 22} We utilize the abuse of discretion standard in determining whether the domestic relations court erred by sustaining Wolfe's objections to the magistrate's decision. We will not reverse the court's decision unless we conclude that the determination was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} Although Hammond faulted Wolfe for the failure of visitation, he acknowledged that it was the children who had refused to participate. Otherwise, he did not offer any evidence demonstrating that Wolfe had denied Hammond visitation. Instead, the record showed that there were times Hammond attempted to pick up the children at Wolfe's house. Wolfe had the children out on the front porch with their bags, but the children refused to get into Hammond's car. There was one occasion when Hammond attempted to pick up one child after a sports event, but the child refused to leave with Hammond. Additionally, at the first Scene 75 exchange, the children would not get into Hammond's car. At the next two Scene 75 exchanges, Wolfe had the children go into the facility and informed Hammond that they were inside. Hammond then refused to go into the facility to retrieve the children and ultimately left the venue without them.

{¶ 24} During the hearings, Hammond expressed his belief that Wolfe, as the custodial parent, was solely responsible for making the children engage in parenting time. Hammond's testimony further indicated that he believed he and the children had no relationship issues and that he did not want to participate in -- and saw no reason for -- family counseling. He expressed no regret regarding the October 22, 2022 incident and indicated that he was within his rights to restrain the children in his vehicle until he was satisfied that Wolfe was home. However, Hammond indicated during the hearings that it would not be appropriate to use physical force to initiate parenting time.

{¶ 25} These children are of an age at which they are entitled to a certain amount of personal autonomy in their decision making. Indeed, although the parties did not

contest whether parenting time should occur, "an affirmative and independent decision by a child to not visit a parent plays a pivotal role in whether the visitation should be compelled." *Veach v. Adams*, 2022-Ohio-4031, ¶ 13 (1st Dist.), quoting *Hagan v. Hagan*, 2019-Ohio-51, ¶ 49 (5th Dist.), citing *Smith v. Smith,* 70 Ohio App.2d 87, 89-90 (10th Dist. 1980). Further, "[c]ourts have upheld a trial court's decision not to hold a residential parent in contempt where, despite encouragement, a child of suitable age had refused to engage in parenting time." *Veach* at ¶ 15, *citing K.M.M. v. A.J.T.*, 2021-Ohio-2452, ¶ 26-28 (8th Dist.).

{¶ 26} In this case, there was competent, credible evidence to demonstrate that the children were the ones who had decided they did not wish to participate in parenting time with Hammond based upon Hammond's own behavior during parenting time. Further, as noted by the domestic relations court, Wolfe had continuously encouraged the children to attend parenting time. There was no evidence that Wolfe had ever failed to have the children available for Hammond to pick up or that she had ever failed to transport them to Hammond. Obviously, Wolfe cannot physically force the children to participate in visitation. And although she admitted that she had not imposed consequences upon the children for their refusals to go with Hammond, we note that she was under no written order to do so. Further, she testified that she was willing to impose reasonable consequences if the court so required. The court has now imposed such a duty.

{¶ 27} Based upon the record before us, we cannot conclude that the domestic relations court abused its discretion in finding that Wolfe should not be held in contempt, as the record lacked clear and convincing evidence that she had interfered with parenting

time.    Accordingly, the assignment of error is overruled.


## II.    Conclusion

**{¶ 28}** Hammond's sole assignment of error being overruled, the judgment of the domestic relations court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and WELBAUM, J., concur.