[Cite as *Giumenti v. Johns*, 2024-Ohio-5562.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MISTI GIUMENTI | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2024-AP-01-0003 |
| | : | |
| ADAM JOHNS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Tuscarawas County
                                Court of Common Pleas


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         November 22, 2024


APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

Tara Wright-Timberlake                  Dan Guinn
122 South Wooster Avenue                232 West 3rd St.
Strasburg, Ohio 44680                   Dover, Ohio 44622

*Delaney, P.J.*

{¶1} Defendant-Appellant Adam Johns Defendant has appealed the January 23, 2024, Judgment Entry of the Tuscarawas County Court of Common Pleas that modified parenting time for his children with their mother. Plaintiff-Appellee is the children's mother, Misti Giumenti.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Defendant-Appellant Adam Johns and Plaintiff-Appellee Misti Giumenti were divorced 2019. They had two children, a son born January 1, 2013, and a daughter born August 15, 2016. As part of the divorce, the parties agreed that father would be the sole residential parent and legal custodian of their son and daughter. Mother would have parenting time every other weekend and every Wednesday.

{¶3} On May 11, 2022, father filed an ex parte motion regarding supervised parenting time, a motion to modify parenting time, and a motion for an in camera interview of the children. He filed the motions after learning of a comment their son made to a counselor that he would harm himself if he had to go with his mother. Father was also concerned to hear his son report that mother had pushed him down and that his stepfather had made derogatory statements about his stepson's weight. Father stated that the children no longer desired parenting time with mother and they expressed hurt and frustration from how she treated them. They would sometimes cry that they had to go with her and at times would refuse to go at first.

{¶4} Over the next year and a half, the parties filed multiple motions, and the court held status conferences and hearings on the motions. A brief description of the hearings and resulting orders follows.

{¶5} In response to the initial motions to modify, the magistrate held an oral hearing and modified mother's parenting time to three hours on Wednesday and three hours on Saturdays. The time was to be supervised by mother's parents and the exchange would take place at the police department. The magistrate set a status conference for an initial review of the Guardian ad Litem's report and recommendations.

{¶6} The status conference was held on June 29, 2022, and was an oral hearing to review the Guardian ad Litem's report and recommendations and to review parenting time and pending motions. The magistrate ordered that supervised parenting time continue, that the parties engage in joint counseling, and that the Guardian ad Litem should continue her investigation. All other orders remained in effect.

{¶7} The magistrate held a status conference on July 8, 2022, to review the updated recommendations of the Guardian ad Litem. The magistrate noted that the primary concerns of the children were trust and anxiety issues, particularly for the son regarding prior incidents with mother. The counselor stated that the children did not feel as connected to their mother as they had at a previous time when the parenting time was held at a supervised counseling center.

{¶8} The magistrate ordered that the supervised parenting time would continue and added 10 minutes of iPad communication with mother on Tuesdays and Thursdays. In addition, she ordered mother to engage in the children's counseling and to engage in individual counseling. She ordered both parents to schedule joint parenting counseling. The Guardian ad Litem was to continue her investigation and to update her report if necessary. The matter was the set for a status conference.

{¶9} The next status conference was held on November 18, 2022. The magistrate modified mother's parenting time to public parenting times without supervision

on Saturdays and Sundays from 10:00 a.m. to 2:00 p.m. Mother was ordered to enroll herself in counseling and to "enter into intense, in person counseling" with the children. The Guardian ad Litem was authorized to give her reports to mother's counselor and to attend parenting time at her discretion.

{¶10} On December 20, 2022, the court held an oral hearing on father's claim that mother was not following the November 18, 2022, order. The Guardian ad Litem reported that the son was becoming indifferent towards mother and the daughter was writing in her journal that she did not want to see mother. Mother claimed it was difficult to spend time with the children in public for four hours and that she sometimes took them back to her home where they would be around her husband and his children. The magistrate concluded that mother "has made it abundantly clear that she does not only disregard Court Orders, she does not prioritize her children and her emotional bond and relationship with them."

{¶11} The magistrate ordered that mother would have two public parenting times per week for two hours each, one on Wednesday and one on Sunday. The magistrate acknowledged that there did "not appear to be a 'danger' involved in the visits," but rather a "strain in the emotional relationships."

{¶12} On February 16, 2023, the magistrate held an oral hearing. In addition to the initial three motions, the magistrate considered father's motion for contempt, mother's motion to reallocate parental rights, mother's motion to extend parenting time, and mother's motion for contempt. The magistrate ordered that there would be a four-week hiatus from parenting time between mother and son, and after the four weeks they would resume therapeutic sessions. Mother would continue her parenting time with daughter

which the magistrate ordered to now take place at a restaurant of daughter's choosing and at the public library. They, too, would continue their therapy sessions.

{¶13} In response, mother filed a motion to set aside the order. The judge granted the motion on April 3, 2023, and found that the order was "too restrictive" and "not supported by the findings." The judge vacated the order as to the daughter only and lifted the requirement that parental time take place in the library. The court further found that father's suggestion mother did not want to see their son was an inappropriate characterization and that her agreement to take a month break was based on the son's desire not to have parenting time.

{¶14} After this order, mother stopped seeing their daughter. Father filed additional motions seeking to remove her remaining parenting time.

{¶15} The magistrate then held a three-day hearing and, on August 3, 2023, issued a decision that considered all the motions and responses filed to date. At issue for this appeal were the three initial motions, as well as mother's motion for reallocation of parental rights and responsibilities to be named legal custodian and residential parent, mother's motion to extend parenting time, and father's motion to modify parenting time. After extensive fact finding, the magistrate denied mother's motion for shared parenting. She recommended that mother's parenting time be at the supervised counseling center that had been used earlier, that her counseling with the children continue as clinically appropriate for each child, and that the 10 minute twice a week phone calls be returned.

{¶16} Mother filed objections to the magistrate's decision. She argued that the decision was against the manifest weight of the evidence, that the parenting orders were too restrictive, and that it was not in the children's best interest to make adult decisions. She also argued that the current orders restricted her from mending the issues with the

children. She asked the court to reinstate her parenting time as set forth in the September 17, 2021, order which gave her every other weekend and Wednesdays.

{¶17} On January 23,2023, the judge issued a judgment entry. After reviewing the transcripts of the three-day hearing and listening to the in camera interview of the children, the judge adopted parts of the magistrate's decision and rejected others. At issue in this appeal is that the judge rejected the magistrate's parenting time recommendations and reinstated mother's parenting time to what was set out in the September 17, 2021, order. Father has appealed this judgment entry on the issue of parenting time.

### ASSIGNMENTS OF ERROR

{¶18} THE COURT ABUSED ITS DISCRETION AND DID NOT ACT IN THE BEST INTERESTS OF THE CHILDREN WHEN IT SUSTAINED APPELLEE'S OBJECTION WHICH RESULTED IN THE MAGISTRATE'S DECISION BEING OVERRULED IN PART.

### ANALYSIS

{¶19} In his sole assignment of error, father has argued that the trial court abused its discretion in overruling the magistrate's decision in part and restoring the original parenting time. Although he acknowledged in his brief that there was no danger to the children due to any issues regarding mother's residence, excess use of drugs or alcohol, or domestic violence, he contended that the increased parental time was not in the children's best interest. Specifically, he has argued that mother's "actions, her refusal to listen to the children, and not making them a priority has drastically hurt their relationship."

{¶20} Decisions regarding parenting time generally lie within the trial court's sound discretion. *Doughty v. Doughty*, 2019-Ohio-974, ¶ 32 (5th Dist.), citing *Rownd v. Marcelli*,

2016-Ohio-7142 (5th Dist.). The trial court has broad discretion in modifying parenting time. *Bohannon v. Lewis*, 2022-Ohio-2398, ¶ 27 (1st Dist.). That discretion must be exercised in a manner which best protects the interest of the child. *Id.* To find an abuse of discretion, an appellate court must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *In re Jane Doe 1*, 57 Ohio St.3d 135 (1991), *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶21} Modification of parenting time is governed by R.C. 3109.051. *Braatz v. Braatz*, 85 Ohio St.3d 40 (1999), paragraph one of the syllabus. "Pursuant to R.C. 3109.051(D), the trial court shall consider the fifteen factors enumerated therein, and in its discretion shall determine visitation that is in the best interest of the child." *Id.*

{¶22} 3109.051(D) provides:

(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶23} This Court has recognized that the trial court has the discretion to set and modify parenting time. *Hagan v. Hagan*, 2019-Ohio-51, ¶ 44 (5th Dist.)  This includes the power to set the time and place of parenting time, to determine the conditions under which it will take place, and even to deny parenting time rights altogether. *Id.*

{¶24}  The central focus of any parenting time order is the best interest of the child. *Jonathan W. v. Ashley W.*, 2019-Ohio-5233, ¶ 34 (5th Dist.), citing *Kelm v. Kelm*, 92 Ohio St.3d 223 (2001). It is the paramount consideration when granting parenting time and "a parent's right to visit a child is subservient to the welfare of the child."  To further the child's best interest, a "trial court may limit or restrict visiting rights of a party." *Id.,* at ¶ 34, citing *Callender v. Callender*,  2004–Ohio–1382, ¶ 31 (7th Dist.). Absent a determination that it would not be in a child's best interest, an order permitting parenting time shall ensure, whenever possible, the opportunity for both parents to have frequent and continuing contact with the child. R.C. 3109.051(A).

{¶25} When it is clear from the record the court considered the factors in R.C. 3109.051(D), we will not find an abuse of discretion even if the factors are not specifically referenced. *Ward v. Wilson*, 2017-Ohio-579, ¶ 37 (5th Dist.), citing *Troyer v. Troyer*,

2010–Ohio–3276, ¶ 36 (7th Dist.). It "is not an abuse of discretion when it appears from the journal entry that some of the factors under that section were addressed." *Troyer,* at ¶ 36. When examining the decision by a trial court to adopt or not adopt a magistrate's decision for an abuse of discretion, the focus of this court must be on the trial court's actions and not the decisions of the magistrate. *In re Ratliff,* 2002-Ohio-6586 (11th Dist.).

{¶26} In this case, a magistrate conducted the status conferences and the hearings on the motions. Civ.R. 53(E)(4)(b) dictates the protocol to be followed by the judge when objections to the magistrate's decision are filed. The rule provides:

> The court shall rule on any objections. The court *may adopt, reject or modify* the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration. (Emphasis added.)

{¶27} In this case, father has argued that mother had not seen the children for months, that she did not want parental time with their son, and that she was "not making any progress in her relationship with them." He stated that the children did not want parenting time with her, and that their son threatened self-harm if made to go with her. Father pointed to specific acts such as pushing their son, going grocery shopping during parenting time, refusing to apologize for things when the children expressed their feelings, and taking the children to one of her stepchildren's games but not attending their son's games.

{¶28} He contended that the court abused its discretion because it did not adopt the magistrate's report when the magistrate had heard the testimony and had the best chance to observe the credibility of the witnesses, including the counselor and the Guardian ad Litem. He argued that the court "failed to see" that the mother was allowed

to have the children for four hours yet took this time to go shopping instead of "working on her relationship with them." He further stated that the court did not look to mother's diminished relationship with the children, her refusal to follow court orders, and the opinions of the Guardian ad Litem and the counselor.

{¶29} Father's arguments on appeal are a continued assertion that the evidence supported restricting mother's parental time. As explained above, however, we review the judge's rulings on objections to the magistrate's decision under an abuse of discretion standard. "When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court." *Byers v. Robinson,* 2008-Ohio-4833, ¶ 61 (10th Dist.). "An abuse of discretion will not be found when the reviewing court simply could maintain a different opinion were it deciding the issue *de novo.*" *Id.*

{¶30} The record reflects that the trial court considered the issues raised by father. In her thorough judgment entry, the judge addressed the specific instances of concern, mother's refusal to follow orders, the testimony of the Guardian ad Litem and counselor, and the diminished relationship.

{¶31} She noted son's comments regarding self-harm that he made to his counselor and to an officer at the police station during a parenting time exchange. She stated that the counselor and the officer did a risk assessment and found that these were determined to be expressions of frustration when having to be with mother and "not an indication that he actually intended to harm himself." She also pointed to several witnesses who testified that their son had "found his voice in the process of being able to share his feelings about his mother" and deemed this a positive emotional development. She concluded that it was not in the best interest of a child his age to be making adult decisions.

{¶32} The pushing and shopping incidents were addressed as well. The court stated that during parenting time mother observed her son push his sister to the ground and then saw him standing over his sister yelling at her. The court found there was conflicting testimony whether mother did push him and whether she pushed him to the ground. The judge noted that mother addressed the situation by imposing a time out for his actions.

{¶33} Addressing the trip to the grocery store during parenting time with the children, the judge observed that shopping was a "normal activity that parents sometimes engage in with their children." Accordingly, she determined it was not a consideration for limiting parenting time.

{¶34} The court specifically rejected the notion that mother did not want to see their son. In the April 3, 2023, judgment entry, she stated that "this was not an appropriate characterization" of mother's agreement to take a break from having parenting time with him. The court found that mother's decision to forego time was based on his repeated desire not to have parenting time.

{¶35} The court recognized mother's role in the diminished relationships. The judge found that mother "should make more of an effort to attend the children's activities and become more involved." The judge also expressly stated that the court did not condone mother's decision to refuse to see her daughter in response to the magistrate's orders.

{¶36} The court did not disregard the testimony of the Guardian ad Litem and the counselor. The judge acknowledged that the children repeatedly stated that they did not want to see their mother, but she focused on the Guardian ad Litem's testimony which indicated they were "happy and playful" when observed with their mother in person.

Similarly, the judge looked to the counselor's testimony that in later sessions mother had improved her ability to share with the children that she was hearing them and understanding their point of view, even providing them journals so they could more effectively communicate with her.

{¶37} The court did not ignore the children's "adamant stance against spending time with their mother," but used it as the basis for a change in circumstance to consider whether to give shared parenting to the parties. The court determined that it was not appropriate to order shared parenting at this time, despite mother's request to do so.

{¶38} Ultimately, the judge found that the more restrictive orders did not improve the relationships between mother and children, but "may have had the opposite effect." For example, the orders may have reinforced the son's feelings that his mother did not care about him. The judge stated it was unclear how the children's relationships with mother would improve, without "regular, consistent, unrestricted time." While the judge acknowledged that "restarting parenting time will likely be difficult for the children," she concluded it was in their best interest in the long term.

{¶39} In this case, the judge reviewed the evidence that was presented at the hearings, addressed the appropriate statutory factors when determining the children's best interest, and determined that mother's parental time should be restored. In doing so, the judge rejected part of the magistrate's order. Although father agrees with the magistrate's conclusions and not with the judge's rejection of those conclusions, the facts do not demonstrate that the judge acted unreasonably, arbitrarily, or unconscionably in rejecting the magistrate's decision and restoring mother's parenting time. Accordingly, the assignment of error is overruled.

## CONCLUSION

{¶40} The trial court did not abuse its discretion when rejecting the magistrate's decision and restoring mother's parenting time. The judgment of the Tuscarawas County Court of Common Pleas is affirmed.


By:  Delaney, P.J.,

Baldwin, J. and

King, J., concur.