[Cite as *In re E.W.*, 2026-Ohio-1164.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re E.W.

Court of Appeals No.   {62}OT-25-0252

Trial Court No.  2024 JUV 255

**DECISION AND JUDGMENT**

Decided: March 31, 2026

* * * * *

Zachary E. Dusza, for appellant.

Sarah A. Nation, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, T.F., the mother ("mother") of minor child, E.W., from the May 2, 2025 judgment of the Ottawa County Court of Common Pleas, Juvenile Division, awarding legal custody of E.W. to his maternal grandmother, appellee, R.F. ("grandmother") and supervised visits to mother.  For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Mother sets forth two assignments of error:

1. The trial court abused its discretion in awarding custody of the minor child herein to [grandmother] and severely restricting [mother's] parenting time.

2. The trial court's decision was against the manifest weight of the evidence.

## Background

### Michigan

{¶ 3} The following events occurred in Michigan, except where otherwise noted.

{¶ 4} In or about 2003, when mother was 10 years old, she was adopted by grandmother and her husband, T.F. ("grandfather"). When mother was 18 years old, she left grandmother's and grandfather's (collectively "grandparents") house. Mother went to Job Corps when she was 19 years old and earned her GED and CNA license.

{¶ 5} In November 2013, E.W. was born to mother, who was unmarried. Mother brought E.W. home from the hospital to grandparents' house and lived there for two to five months. Mother and E.W. then moved out of grandparents' house but returned in about July 2014. Since that time, E.W. has lived with grandparents, and grandmother has been E.W.'s primary caregiver. Mother moved out of grandparents' home at some point.

{¶ 6} Also in July 2014, mother filed a petition for the appointment of a limited guardian for E.W. after grandmother encouraged mother to give grandmother guardianship of E.W. so grandmother could get him medical care and "sign for him the things that he needed to get done. . . [T]he guardianship was not meant to be permanent." A Michigan probate court granted grandmother a limited guardianship of E.W., when E.W. was about seven or nine months old. Mother had parenting time with E.W., which she exercised.

2.

{¶ 7} In February 2019, mother gave birth to E.W.'s half-sister, S ("sister"). Mother was unsure who fathered sister. Mother was homeless when she was pregnant with sister. After sister was born, grandparents helped mother with sister's care for several years. Mother has full custody of sister.

{¶ 8} On May 19, 2022, mother filed an action in the probate court to terminate the limited guardianship of E.W., and for reunification with E.W.

{¶ 9} In November 2022, grandparents and E.W. moved to Ottawa County, Ohio. Mother and sister continued to live in Michigan.

{¶ 10} On or about December 1, 2022, grandmother filed a complaint for custody of E.W. in family court in Jackson County, Michigan. Grandmother alleged, inter alia, that E.W. primarily lived with grandparents since 2014 when mother asked grandmother to take E.W. into grandmother's home. On December 22, 2022, mother filed her answer to the complaint, in which she admitted the foregoing allegation.

{¶ 11} On February 10, 2023, mother filed, in family court, a motion for visitation with E.W. and to prohibit grandmother from filing an action outside of the family court's jurisdiction regarding the custody, guardianship or adoption of E.W. Mother asserted, inter alia, that grandparents, without notice to mother or the court, moved with E.W. from Michigan to Ohio, which was over two hours away from mother, and since May 2022, visits between mother and E.W. had been challenging. On March 14, 2023, grandmother filed a response to the motion in which she set forth that the move to Ohio was to facilitate better employment for grandfather and mother was aware of the move and encouraged it.

3.

{¶ 12} On May 24, 2023, the family court issued an order granting mother and grandmother joint legal custody of E.W., with grandmother having primary physical custody. The court further ordered that mother have parenting time with E.W. and pay child support. Neither grandmother nor mother filed written objections to the order.

{¶ 13} Mother initially had supervised parenting time with E.W. every week for one hour, then she had unsupervised time with E.W., which eventually led to unsupervised visits every other weekend. The exchanges of E.W. for visits happened originally in Jackson, Michigan, but changed to Adrian, Michigan.

{¶ 14} In September 2023, mother filed a motion to modify child support in the family court. A hearing was subsequently held and mother's motion was denied.

{¶ 15} In October 2023, there was an incident during an exchange of E.W. from grandparents to mother. According to grandmother, E.W. did not want to go with mother for a visit, so mother tried to pull E.W. out of grandparents' car. Grandmother yelled at mother to get out of the car. The police were ultimately called, and E.W. went with mother in accordance with the court order.

{¶ 16} On or about December 19, 2023, mother filed, with the family court, a motion regarding custody of E.W., in which she sought full legal and sole custody.

{¶ 17} On December 20, 2023, grandmother filed, with the family court, a motion for, inter alia, a change in custody seeking sole legal custody of E.W. and requesting that mother's parenting time be suspended pending a psychological evaluation and the completion of a parenting course. In the motion grandmother alleged that during mother's parenting time with E.W.: mother refused to give E.W. his ADHD medicine;

4.

mother focused on E.W.'s hygiene and in November 2023, mother bathed and scrubbed E.W. (who was 10 years old); mother focused on E.W.'s size and weight and E.W. was always hungry when he was returned to grandparents; mother brushed E.W.'s teeth until his gums were red and irritated; and at the beginning of visits, mother took pictures of E.W. to document any blemishes, but E.W. did not want to be photographed.

{¶ 18} On January 29, 2024, the family court issued an order, inter alia, denying mother's motion regarding custody, setting grandmother's motion for change in custody for an evidentiary hearing, denying grandmother's request for a psychological evaluation of mother, ordering both parties to administer medicine to E.W., ordering both parties to complete the Children in Between: High Conflict Solution program and file a certificate of completion, ordering that neither party shall photograph E.W. for litigation purposes and ordering that neither party shall make derogatory comments about the other.

{¶ 19} On April 15, 2024, the family court considered interim issues, which consisted of mother's failure to complete the ordered program, mother's failure to administer medicine to E.W. and derogatory/negative comments mother made about grandmother.

{¶ 20} On April 24, 2024, grandmother filed an ex parte motion to suspend mother's parenting time in which it was alleged that mother failed to administer medicine to E.W. and mother made derogatory/negative comments about grandmother. On April 25, 2024, the family court issued an ex parte order suspending mother's parenting time with E.W. On April 30, 2024, mother filed objections to the order. On May 30, 2024, a

5.

hearing was held in family court. On June 5, 2024, the court issued an order setting aside the ex parte order and granting mother visits with E.W. every other weekend.

{¶ 21} On August 1, 2024, the family court issued an order finding, inter alia, that it no longer had jurisdiction, E.W. resided in Ohio for over six months and jurisdiction was proper in Ohio. The family court ordered the case transferred to the applicable court in Ottawa County, Ohio.

{¶ 22} On August 10, 2024, an incident occurred between mother and E.W. during a visit ("the incident") at mother's apartment in Lansing, Michigan, where police were summoned and she was arrested for child abuse.

**Ohio**

{¶ 23} The following events happened in Ohio, except where otherwise noted.

{¶ 24} In February 2024, E.W. started individual counseling and continued counseling through at least September 2024.

{¶ 25} On August 12, 2024, an ex parte domestic violence civil protection order ("CPO") was issued by the Ottawa County Court of Common Pleas. Grandmother sought the ex parte CPO on behalf of E.W. as a result of the incident in Michigan. A hearing on the matter was held and on August 22, 2024, a CPO was issued pursuant to R.C. 3113.31. The CPO remains in effect until August 31, 2026.

{¶ 26} Also in August 2024, the Michigan family court transferred the case to the Ottawa County Court of Common Pleas, Juvenile Division ("trial court"). It appears that the case commenced in the trial court at the stage where the prior proceedings in

6.

Michigan had ceased - with grandmother's December 20, 2023 motion for a change in custody seeking to terminate joint custody of E.W. and have sole legal custody of E.W.[1]

{¶ 27} On August 28, 2024, grandmother filed a motion for the trial court to conduct an in-camera interview of E.W.

{¶ 28} On October 4, 2024, the trial court held an in-camera interview with E.W.

{¶ 29} On October 9, 2024, correspondence from the clinical supervisor of E.W.'s counseling center regarding E.W.'s sessions, mental state and mental health was filed with the trial court.

{¶ 30} On January 6, 2025, a trial was held before a magistrate on grandmother's motion. Mother, grandmother, grandfather and another relative, M.F., testified.

{¶ 31} On February 2, 2025, the magistrate issued a decision in which she reached the conclusions, inter alia, that grandmother shall be the sole custodian of the child,

---

[1] Jurisdiction over interstate child-custody actions is governed by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which is codified in R.C. Chapter 3127. The UCCJEA outlines circumstances under which an Ohio court may assume jurisdiction over a custody determination issued by a court of another state, *see, e.g.*, R.C. 3127.17, and enforce a custody determination made by a court of another state. *See* R.C. 3127.33. The UCCJEA also sets out detailed procedures for registering a foreign child custody decree in an Ohio court. *See* R.C. 3127.35. We observe there is no indication in the record that grandmother sought to register the Michigan decree in the trial court. Nevertheless, there is no requirement in the UCCJEA that the foreign decree be registered before an Ohio court may modify the foreign child custody determination. *See Bonds v. Bonds*, 2011-Ohio-5867, ¶ 50 (11th Dist.). Moreover, mother did not raise the issue of the lack of registration, she did not contest the validity of the Michigan decree, nor did she claim that the trial court lacks jurisdiction.

7.

mother shall be permitted to exercise Level 2 supervised visits with the child once a month.

{¶ 32} On February 21, 2025, mother filed objections to the magistrate's decision claiming the decision was contrary to law, not supported by competent, credible evidence and against the manifest weight of the evidence.

{¶ 33} On May 2, 2025, the trial court issued its judgment entry, noting that the magistrate entered her decision and mother filed objections to the decision. The trial court found there were no errors of law or other defects on the face of the magistrate's decision and adopted that decision.

{¶ 34} Mother appealed.

**Magistrate's Decision**

{¶ 35} The magistrate detailed the testimony presented at trial and set forth the following relevant information.

{¶ 36} Grandmother has resided in Port Clinton, Ohio, since November 22, 2023. She has been married for 35 years and works in education. Throughout mother's childhood, mother suffered from mental health issues and had two psychiatric stays.

{¶ 37} E.W. has been in grandmother's care "since the child was born and [m]other moved out when the child was 9 months old."

{¶ 38} Prior to E.W.'s visits with mother, he would get very anxious and did not want to go. During visits, E.W. was not given his allergy medication or his ADHD medication, and mother routinely disparaged grandparents. When E.W. returned from one visit, he had been scrubbed raw by mother.

8.

{¶ 39} Regarding the incident which prompted the CPO, during the weekend visit with mother, E.W. repeatedly called grandmother asking for help. Grandmother contacted the police and requested a welfare check of E.W. which resulted in mother being arrested for child abuse based on marks on E.W.'s face and neck and bruising on his buttocks. Thereafter, mother's visits with E.W. were suspended.

{¶ 40} M.F. observed E.W. before and after visits with mother and testified that E.W. was needy and whiny and appeared shell-shocked upon his return from visits with mother. Once visits stopped, E.W. appeared to be well adjusted and never said he missed mother or wanted to see her.

{¶ 41} Grandfather supports grandmother's motion for custody and confirmed her testimony. Neither he nor grandmother want E.W. to have a relationship with mother, nor do they want E.W. in therapy with mother.

{¶ 42} Mother testified she has her GED and a STNA license and works at nursing homes primarily on weekends; she works about 24-40 hours a week. Mother lives in a two-bedroom apartment with sister.

{¶ 43} Mother admitted E.W. was emotional about going with her on visits, but believes he enjoyed his visits. She also admitted that she showered E.W. because he did not know how to wash, and that she criticized E.W.'s weight and told him he smelled. Mother acknowledged that she slept until 2 p.m. one time during a visit and had not fed E.W., but there was food in the house. She does not give E.W. his medicines on visits, as she did not believe in ADHD medication.

9.

**{¶ 44}** Mother indicated there was no co-parenting of E.W. with grandparents, as her relationship is strained at best. She does not want to deal with grandparents and does not want interference from them.

**{¶ 45}** Mother admitted she smokes marijuana every day and has smokes when the children are with her, but she smoked in the bathroom or outside. She also admitted she has used marijuana and driven, but not when her children were in the car. Mother would like every other weekend visits with E.W., and visitation in the summer.

**Law and Argument set forth by the Magistrate**

**{¶ 46}** With respect to modifying a prior decree allocating parental rights, the trial court[2] must first find that a change has occurred in the circumstances of the child or the residential parent, pursuant to R.C. 3109.04(E)(1). The trial court must retain the residential parent unless a modification is in the best interest of the child and one of the following applies:

> (i) The residential parent agrees to a change in the residential parent . . .
> (ii) The child, with the consent of the residential parent . . . has been integrated into the family of the person seeking to become the residential parent.
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶ 47}** It was apparent to the parties and the trial court that the Michigan order was unworkable and a change in circumstances had occurred, when considering grandmother's relocation, the parties' hostility and inability to communicate, E.W.'s age and his wishes. The trial court terminated Michigan's joint custody order.

---

[2] The magistrate referred to herself as the trial court in her decision.

10.

**{¶ 48}** The trial court considered the best interest of E.W. pursuant to R.C. 3109.04(F)(1) and found as follows.

(a) The wishes of [E.W.'s] parents regarding [E.W.'s] care;
Mother testified that she wanted custody of [E.W.] and then at the conclusion of her testimony indicated that she wanted visitation. Grandmother has always wanted custody of [E.W.].

(b) If the [trial court] has interviewed [E.W.] in chambers . . . regarding [E.W.'s] wishes and concerns as to the allocation of parental rights . . .;
The [trial court] did an in-camera interview of [E.W.].

(c) [E.W.'s] interaction and interrelationship with [his] parents, siblings, and any other person who may significantly affect [his] best interest;
[M.F.] testified that upon moving back to the area he sees [E.W.] frequently and they have a good relationship.
Mother indicates that she wants [E.W.] to have a relationship with [his sister].

(d) [E.W.'s] adjustment to [his] home, school, and community;
[E.W.] is well adjusted to Oak Harbor.

(e) The mental and physical health of all persons involved in the situation;
There was no testimony of any physical or mental health limitations of [g]randmother.
There was testimony that [m]other had mental health issues.

(f) The parent more likely to honor and facilitate [c]ourt-approved parenting time rights or visitation and companionship rights;
Both parties appear to be willing to honor and facilitate [c]ourt[-]approved parenting time.

(g) Whether either parent has failed to make all child support payments . . .;
Mother was ordered to pay child support, however there was no testimony as to its current status.

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; . . .;
There was no evidence of this presented.

(i) Whether the residential parent or one of the parents subject to a shared parenting decree . . . ;
There is no shared parenting order.

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
Neither party is intending on moving from their current residence.

## Magistrate's Conclusions

{¶ 49} "Taking the above statutory factors into account," the trial court ordered "the following to be in the best interests" of E.W.:

Grandmother . . . shall be the sole custodian of E.W.
Mother shall not exercise unsupervised visitation at this time.
Mother shall be permitted to exercise visitation at Joyful Connections one time per month for two hours at Level 2 of supervision. Mother shall be responsible for all costs related to [v]isitation.
Mother shall have 2 phone calls per week for a duration of one-half hour.
Grandmother shall claim [E.W.] as a tax exemption every year.
Mother's previously ordered child support in the Michigan case shall continue.

## Trial Court's Judgment

{¶ 50} On May 2, 2025, the trial court adopted the magistrate's decision after reviewing the file, the magistrate's decision and determining independently of that decision, that there were no errors of law or other defects on the face of the decision.

## Mother's Assignments of Error

{¶ 51} In mother's brief, she combines her assigned errors, arguing the trial court abused its discretion in awarding custody of E.W. to grandmother and severely restricting mother's parenting time, and the trial court's decision is against the manifest weight of

12.

evidence.  Mother sets forth that "[c]ourts of appeals apply an abuse of discretion standard when reviewing permanent custody appeals."

{¶ 52} Mother contends that when the trial court determines whether to modify a joint legal custody order, as well as other issues regarding the allocation of parental rights and responsibilities, the court is bound by the best interest factors in R.C. 3109.04(F)(a)-(j).

{¶ 53} Mother believes what is most inappropriate in the trial court's judgment entry is the minimal parenting time that she was afforded, given the testimony and evidence tendered, and the best interest factors.  Mother notes that in the magistrate's decision, the magistrate outlined the best interest factors and provided comments but offered no explanation whatsoever as to why it was appropriate to only afford mother supervised parenting time, at Level 2, once a month for two hours.  Mother asserts that "'[a]bsent a determination that it would not be in a child's best interest, an order permitting parenting time shall ensure, whenever possible, the opportunity for both parents to have frequent and continuing contact with the child. R.C. 3109.051(A).' *Giumenti v. Johns*, 2024-Ohio-5562 [(5th Dist.)]."

{¶ 54} Mother argues the visitation she was afforded by the trial court does not allow her frequent and continuing contact with E.W.  She submits that she was able to refute all of the accusations levied against her by grandmother, and there is no reason why mother should not enjoy parenting time on a more consistent basis, like the parenting time outlined in the trial court's companionship schedule.  Mother contends

13.

that by all reports, she loves her child and desires to maintain a parent-child relationship with him.

{¶ 55} Mother further argues that the trial court completely disregarded E.W.'s relationship with his sister, effectively terminating the children's relationship with each other. This, mother asserts, is despite her testimony about the children's very positive sibling relationship.

{¶ 56} Mother submits that grandparents' actions show they have done nothing but attempt to undermine mother's relationship with her child. Mother claims that to allow her to see E.W. only two hours per month at a supervised visitation facility is just more of an opportunity for grandmother to continue to attempt to alienate the child from his mother and ensure they do not have any kind of meaningful relationship. Mother insists that in no circumstance or situation can that be said to be in the child's best interest.

**Law**

**Legal Custody/Modification of Child Custody Order**

R.C. 2151.011(B)(21) defines legal custody as

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

{¶ 57} In Ohio, child custody disputes are within the purview of one of two statutes: R.C. 2151.23(A)(2) or R.C. 3109.04.

{¶ 58} R.C. 2151.23(A)(2) grants juvenile courts exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state." This

14.

includes "custodial claims brought by the persons considered nonparents at law." *In re Bonfield*, 2002-Ohio-6660, ¶ 43. Thus, a juvenile court may adjudicate child custody claims between a parent and nonparent pursuant to R.C. 2151.23(A)(2). *Id.* at ¶ 45.

{¶ 59} R.C. 3109.04 establishes the process for allocating parental rights and responsibilities typically between the parents of a child. *See In re S.T.*, 2025-Ohio-1379, ¶ 22 (6th Dist.), citing *In re Perales*, 52 Ohio St.2d 89, 96 (1977).[3]

**Best Interest Factors**

{¶ 60} R.C. 3109.04(F)(1) provides:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;
(b) If the court has interviewed the child in chambers . . . the child's wishes and concerns . . .
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
(g) Whether either parent has failed to make all child support payments . . .
(h) Whether either parent or any member of the household of either parent previously has been convicted of . . . [inter alia,] any criminal offense involving any act that resulted in a child being an abused child or a neglected child . . .

---

[3] We note that the magistrate and the juvenile court applied a two-part analysis per R.C. 3109.04(E)(1)(a) when analyzing grandmother's motion for change in custody. Given that mother's arguments raise only a concern with the best interest factors in R.C. 3109.04(F)(a)-(j), we limit our focus to that narrow issue.

15.

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time . . .

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state. . . .

## Standard of Review

{¶ 61} A trial court's decision in a custody modification proceeding will not be reversed absent an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). An abuse of discretion implies that the trial court's attitude was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). If there is some competent, credible evidence in the record to support the trial court's decision, there is generally no basis for a reviewing court to find an abuse of discretion. *Ross v. Ross*, 64 Ohio St.2d 203, 204 (1980).

## Analysis

{¶ 62} At the outset, we recognize that mother set forth two assignments of error, the second of which is that the trial court's decision is against the manifest weight of evidence. However, mother offers no argument or legal authority in support of the second assigned error. We therefore dismiss mother's second assignment of error and limit our examination to mother's first assigned error. *See Ohio Div. of Securities v. Treece*, 2022-Ohio-3267, ¶ 13 (6th Dist.) ("'According to App.R. 12(A)(2) [an appellate court] may disregard an assignment of error if an appellant fails to cite to any legal authority in support of an argument a required by App.R. 16(A)(7),' *Huffer v. Brown*, . . . 2013-Ohio-4384, ¶ 12 [(10th Dist.)] (citations omitted).").

16.

{¶ 63} Mother argues in her first assignment of error that the trial court abused its discretion in awarding custody of E.W. to grandmother and severely restricting mother's parenting time.

{¶ 64} A review of the record, including the transcript of the hearing on grandmother's motion for change of custody and the magistrate's decision, we find the magistrate considered and analyzed the R.C. 3109.04(F)(1) best interest factors and provided findings for each factor, which findings were supported by the record. In the decision, the magistrate detailed, inter alia, that mother smokes marijuana daily, she admitted that she did not give E.W. his prescribed medicine when he was with her, she was critical of E.W.'s weight and cleanliness, she disparaged grandparents during visits with E.W., she slept until 2:00 in the afternoon on one occasion when she had E.W. and his sister in the apartment, E.W. has been in grandmother's care since he was about nine months old, a CPO was issued for E.W.'s protection due to the incident between he and mother which resulted in marks on E.W., grandparents do not want mother to have a relationship with E.W., the parties do not co-parent and the parties' relationship is strained. The trial court then adopted the magistrate's decision.

{¶ 65} Upon reviewing the evidence and the applicable law, we find competent, credible evidence in the record to support the trial court's judgment. As such, we cannot say that the trial court abused its discretion when it found it was in E.W.'s best interest to award legal custody to grandmother, and to limit mother's parenting time to supervised visits once a month for two hours and two phone calls per week.

{¶ 66} Accordingly, we find mother's first assignment of error not well-taken.

17.

**{¶ 67}** For the foregoing reasons, and having dismissed mother's second assignment of error, the May 2, 2025 judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, mother is ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Gene A. Zmuda, J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| | JUDGE |
| Charles E. Sulek, J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.